**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WAYNE BLAND, DANUTA DURKIEWICZ, DAVID BOWLES, and ADAM REYES, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | |
| v. | Jury Trial Requested |
| EDWARD D. JONES & CO., L.P. and THE JONES FINANCIAL COMPANIES, L.L.L.P., | |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Wayne Bland, Danuta Durkiewicz, David Bowles, and Adam Reyes, individually and on behalf of all others similarly situated, by and through their attorneys, Stowell & Friedman, Ltd., hereby file this Class and Collective Action Complaint against Defendants Edward D. Jones & Co., L.P. and The Jones Financial Companies, L.L.L.P. (collectively, "Edward Jones," "Defendant," or "the Firm").

## INTRODUCTION

1.      Edward Jones recruits new trainee brokers, called financial advisor trainees or "FA Trainees," with promises of extensive training and high pay. The Firm provides no meaningful training and denies FA Trainees the minimum and overtime wages required by federal and state law. Edward Jones forces all FA Trainees to sign unlawful contracts agreeing to pay so-called "training costs" of up to $75,000 if they leave the Firm for any reason within three years after the assignment of a "can sell" date, as most will be forced to do, but pursue a broker job. Edward Jones knows that a majority of the trainees it recruits will not survive the

three year "training cost" period, but does not disclose this to its new hires. FA Trainees not directly fired are forced out by the Firm's high pressure sales requirements and diminishing pay scale, intentionally designed to force advisors to sell or leave, while Edward Jones retains the clients, assets, and commissions the FA Trainees have developed.

2.      As a result, and by design, most FA Trainees will owe Edward Jones a significant portion of their pay as so-called "training costs," despite having received no meaningful training. Armed with the leverage and threat of substantial "training costs" debt if they leave, Edward Jones forces FA Trainees to work long hours and fails properly to record or pay them for hours and overtime worked.

3.      Edward Jones's practice of forcing FA Trainees to "repay" purported training costs and intentionally denying them minimum wages and overtime compensation violates state and federal wage and hour laws, including by failing to pay wages "free and clear." On behalf of themselves and other Edward Jones Trainees, Plaintiffs seek an end to Defendants' unlawful practices and fair relief for class members.

## JURISDICTION AND VENUE

4.      Plaintiffs' claims arise under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, state wage and hour and wage payment laws, and state statutory and common law. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

5.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b). Defendant is licensed to do business in this District, maintains a number of branch offices in this District, and services clients who are residents of this District. Plaintiffs Durkiewicz, Bowles, and Reyes are residents of this District and worked for and were harmed by

Edward Jones in this District. The unlawful conduct challenged herein occurred in this District and across the United States.

**PARTIES**

6.     The Jones Financial Companies, L.L.L.P. is a leader in the financial services industry. Edward D. Jones & Co., L.P., its wholly owned registered broker-dealer financial services subsidiary, claims to serve over "7 million investors from more offices than any other investment firm in America."[1] Edward Jones claims to manage over $204 billion dollars[2] and to be one of the largest financial services companies in the United States, based on assets managed.[3] Edward Jones employs nearly 15,000 registered brokers, called Financial Advisors ("FAs"), to service largely individual investors in more than 12,000 locations throughout the United States.[4]

7.     Edward D. Jones, L.P. is registered with the Securities and Exchange Commission as a broker-dealer. The Firm is a member organization of the Financial Industry Regulatory Authority ("FINRA").

8.     Plaintiffs and the putative class members were employed by Edward Jones as FA Trainees and participated in Edward Jones's training program.

9.     Plaintiff Wayne Bland worked for Defendant as an FA Trainee in Charlotte, North Carolina and in Lake Wylie, South Carolina. Bland worked for Edward Jones from

---

[1] https://www.edwardjones.com/about/index.html
[2] http://investment-advisors.credio.com/l/34116/Edward-Jones
[3] http://investment-advisors.credio.com/saved_search/Largest-Investment-Advisory-Firms
[4] https://www.edwardjones.com/value/edward-jones-advantage.html;
   https://www.edwardjones.com/find-financial-advisor.html

November 2014 until March 2016. Bland worked as a non-exempt employee from his hire until March 2015.[5]

10.     Plaintiff Danuta Durkiewicz worked for Defendant as an FA Trainee in Elk Grove Village and Itasca, Illinois.  Durkiewicz worked for Edward Jones from July 2015 until May 28, 2016.  Durkiewicz worked as a non-exempt employee from her hire until November 15, 2015.

11.     Plaintiff David Bowles worked for Defendant as an FA Trainee in Lake Zurich, Illinois.  Bowles worked for Edward Jones from January 2014 until January 22, 2015.  Bowles worked as a non-exempt employee from January 2014 until June 23, 2014.

12.     Plaintiff Adam Reyes worked for Defendant as an FA Trainee in Chicago, Illinois.  Reyes worked for Edward Jones from October 2015 until June 8, 2016.  Reyes worked as a non-exempt employee from his hire until February 22, 2016.

## FACTUAL ALLEGATIONS

13.     Edward Jones has devised a scheme whereby the Firm recruits FA Trainees and benefits from their services and the clients they develop, fails to lawfully pay FA Trainees, and then can recover much of, or even more than, FA Trainees' wages as what the Firm disingenuously calls "training costs" if these FA Trainees do not succeed or are fired.  Edward Jones encourages FA Trainees to work extensive overtime, but does not properly record their hours or pay them for the hours they work, including overtime hours, during the Firm's Training

---

[5] Bland is African American. In addition to this Complaint, he also filed a related charge, which was cross-filed with the state agency and is currently pending, of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"), challenging the same training, compensation, and "training cost" recoupment policies and practices discussed herein. The charge alleges that these policies and practices are intentionally discriminatory and also have a disproportionate impact on African Americans because of the Firm's racially disparate allocation of territories, resources, support, and other business opportunities.

Program.  This lawsuit challenges these unlawful practices on behalf of the Plaintiffs and all other similarly situated Edward Jones FA Trainees subjected to these practices.

**Unlawful Practices**

14.     As a condition of employment, Edward Jones forces all FA Trainees to execute a one-sided, unlawful written agreement, the "Financial Advisor Employment Agreement" (the "FA Agreement"), after they accept the job but before they begin their employment.

15.     The FA Agreement obligates each FA Trainee to pay Edward Jones what it disingenuously calls "training costs" of up to $75,000 if his or her Edward Jones employment ends for any reason within three years of receipt of a "can sell" date (the date at which Edward Jones deems the FA Trainee qualified to solicit new client business) and the FA Trainee "accept[s] continued employment with any entity as either an employee or independent contractor engaged in the sale of securities and/or insurance business."  Thus, the FA Agreement constitutes a de facto, unlawful restrictive covenant.  Edward Jones knows, but does not inform the FA Trainees, that most FA Trainees it hires will fail out of the training program within the time window of the payment obligation.

16.     The "training costs" that Edward Jones claims it can recover are not legitimate cost recovery measures and bear no relation to costs actually incurred by Edward Jones for training actually provided to FA Trainees.  FA Trainees do not receive training commensurate in value to the "training costs" claimed by Edward Jones, and the majority of the "study" that FA Trainees are expected to complete in the 17-week "Study Calendar" (which includes Saturday self-study modules in each pay period for the first two phases of training) that leads up to receipt of their "can sell" date is self-study for industry licenses and a review of written online materials on a computer loaned by Edward Jones.

17.     The 17-week Study Calendar is broken down into five phases as follows:

i.      Weeks 1-6 are self-study weeks and precede the FINRA Series 7 licensing examination.

ii.     Weeks 7-8 are primarily self-study with the exception of a single day of "field training." The FINRA Series 66 examination is expected to be completed in this period.

iii.    Week 9 is the first week of Edward Jones training where the FA Trainees are given formalized training, in sessions in either St. Louis, Missouri or Tempe, Arizona, and are given pointers on how to develop client business pursuant to Edward Jones's unique client acquisition strategy which consists of walking around a designated neighborhood and knocking on every door with the hope of getting the occupants to sign up for financial advisory services.

iv.     Weeks 10-16 are reserved for "door knocks," where the FA Trainee is expected to obtain contact information for 25 persons per day in their designated territory. Needless to say, obtaining 25 actual contacts requires knocking on considerably more than 25 doors.  Ideally, an FA Trainee will have obtained 125 contacts per week by the end of week 16.

v.      Week 17 is designated as "Evaluation/Graduation," where Edward Jones determines whether the "knowledge" obtained to that time is sufficient to allow the FA Trainee to begin formally soliciting "door knock" contacts to become Edward Jones clients.

18.     Only after the Evaluation/Graduation week can an FA Trainee be assigned "can sell" status. If an FA Trainee has studied for and successfully obtained FINRA Series 7 and 66

licenses and completed the only two interactive sessions of the 17-week Study Calendar, but leaves the Firm before receiving "can sell" status, then the FA Trainee has no obligation whatsoever to pay any so-called training costs. If that same FA Trainee were fired or forced to resign one or two days later, after receipt of "can sell" status, Edward Jones contends the FA Trainee would be obliged for the full amount of $75,000 (more than a full year's tuition for an MBA program at Harvard, Duke, Northwestern, or the University of Chicago).

19.     According to the FA Agreement, training costs owed are to be amortized, or decrease, ratably after the first of the three years following the "can sell" date. Thus, FA Trainees who are fired or forced to leave Edward Jones quickly owe the most amount of money, despite receiving the least amount of "training."

20.     Edward Jones FA Trainees are paid on a bi-weekly basis pursuant to a compensation plan, and each employee receives a schedule of expected compensation shortly after their hire. Although the initial 17 weeks of employment prior to reaching "can-sell" status are identified as overtime-eligible with a designated hourly rate, the compensation schedule builds in projections of overtime that bear little or no connection to reality and do not reflect actual hours worked.

21.     Edward Jones neither tracks nor compensates FA Trainees for the hours they actually work. Edward Jones unlawfully purports to pay FA Trainees a calculated hourly rate that decreases after the first 8 weeks of employment. The initial 8-week employment period assumes five hours of overtime per week, and the next 8-week employment period assumes twenty hours of overtime per week at a reduced hourly rate. The total amounts of bi-weekly checks do not vary from the assumed amount of overtime in either of the 8-week periods, regardless of the actual number of hours worked.

22.     Edward Jones makes no effort to track actual hours worked, which in the first 8 weeks includes a significant amount of self-study in preparation for the FINRA Series 7 and 66 licensing examinations.

23.     The Series 7 and 66 licenses are essential to the successful completion of the initial 17 weeks of employment, and FA Trainees are pressured to pass the exams on their first try under threat of dismissal from Edward Jones.

24.     The relatively low pass rates of first-time Series 7 and 66 test-takers (65% and 72%, respectively) is well known, and FA Trainees often put in long days of study, including weekends, that easily exceed the 45 total weekly hours that Edward Jones assumes in calculating their pay.

25.     For the remainder of the 17-week study period, FA Trainees are pressured to meet their 25 daily contact quota, which requires walking door-to-door in their assigned neighborhoods and finding 25 households willing to provide their contact and other information to an uninvited solicitor.  This can entail many long hours and failed attempts to gain even a single contact.

26.     Once an FA Trainee reaches "can-sell" status, Edward Jones managers, armed with the leverage of the "training costs" obligation, instruct FA Trainees to do whatever is necessary for them to succeed, including putting in long hours to meet sales and production goals to avoid "washing out" of the Training Program (like most FA Trainees will).

27.     Simultaneously, Edward Jones knowingly discourages non-exempt FA Trainees from reporting overtime and fails to pay non-exempt FA Trainees wages and overtime for the work they perform over 40/60 hours per week.  Edward Jones maintains a policy and practice of discouraging non-exempt FA Trainees from accurately reporting all of the hours they work.  As a

result, during the initial training period, non-exempt FA Trainees work hours for which they are not paid their overtime wage as required by applicable laws.

28.     Edward Jones's practice of requiring the "repayment" of so-called "training costs" also constitutes an unlawful kickback, or claw back of earned wages, which also has the effect of denying FA Trainees minimum or overtime wages.  Wages earned are not received "free and clear" because of Edward Jones's mandatory, unlawful "training costs" payment agreement.

29.     Edward Jones is unjustly enriched by these practices because it receives benefits and services from FA Trainees without paying wages owed, while providing little or no meaningful training to the FA Trainees.  In addition, after terminating the employment of these FA Trainees, Edward Jones retains the clients these new FA Trainees have brought in and serviced, as well as the resulting client assets, fees, and revenue generated by these clients.

30.     In sum, Edward Jones operates a scheme of indebting FA Trainees likely to fail for the grossly overstated costs of training the Firm never provided, and using that "debt" as leverage to avoid paying wages lawfully owed to FA Trainees.  Edward Jones's practice of encouraging non-exempt FA Trainees not to report all hours worked, not paying non-exempt FA Trainees for those hours, and attempting to create contractual rights to recoup these so-called "training costs" violate state and federal wage laws.

31.     Edward Jones maintained and/or enforced compensation and other policies and practices that resulted in Edward Jones's failure to compensate Plaintiffs and those similarly situated for all of their earned wages by, among other things, failing to pay lawful wages for hours worked or overtime premiums to employees for all hours worked over 40 in a given workweek as required by federal and state law; and unlawfully claiming entitlement to and attempting to collect sham "training costs" from FA Trainees, which unlawfully recapture earned

wages and, in many instances, result in FA Trainees being paid less than the minimum wage under applicable laws.

32.     Plaintiffs' experiences demonstrate the harm suffered by FA Trainees due to Edward Jones's unlawful practices.

**Plaintiff Wayne Bland**

33.     Plaintiff Bland was recruited to Edward Jones with more than a decade of financial advisory and sales experience.  Although Bland had previously held insurance and Series 6 licenses, they had lapsed by late 2014.

34.     As a condition of employment, Edward Jones forced Bland to sign an FA Agreement, which required him to pay $75,000 in "training costs" if his employment ended for any reason within three years of reaching "can sell" status and certain other conditions were met.

35.     During Bland's employment, Edward Jones advised Bland that he should work very hard to succeed and build his knowledge base and book of business.  Indeed, Edward Jones loaned Bland a laptop computer so that he could work before and after office hours and on weekends, building his book of business for Edward Jones.

36.     Bland worked well over 40 hours per week, studying for his industry licenses, completing Edward Jones's training program requirements, travelling to St. Louis for FA training, completing whatever tasks were assigned to him in the office, and working to develop a network of potential clients, among other things.

37.     Edward Jones failed to provide any meaningful training to Bland.  On the contrary, Edward Jones constructively discharged him in March 2016.

38.     After Bland's employment ended, Edward Jones demanded that Bland pay $75,000 in "training costs," an amount that exceeded Bland's $45,000 initial annual salary and exceeded Bland's total earnings during his employment at Edward Jones.

39.     As a result of Edward Jones's unlawful conduct, Bland was denied wages owed and suffered other damages.

**Plaintiff Danuta Durkiewicz**

40.     Danuta Durkiewicz was hired in July 2015, with over a decade of professional work experience.  As a condition of employment, Edward Jones forced Durkiewicz to sign an FA Agreement, which required her to pay $75,000 in "training costs" if her employment ended for any reason within three years of reaching "can sell" status and certain other conditions were met.

41.     Consistent with Bland's experience, Edward Jones advised Durkiewicz that she should work very hard to succeed and build her knowledge base and book of business.  Indeed, Edward Jones also loaned Durkiewicz a laptop computer so that she could work before and after office hours and on weekends, developing her skillset and building her book of business for Edward Jones.

42.     During the initial phase of her training period, Durkiewicz often worked well in excess of 45 hours per week, and in the second phase, in excess of 60 hours per week.

43.     Durkiewicz did not receive the meaningful training or lucrative career Edward Jones promised.

44.     Like many FA Trainees lured to Edward Jones with false promises, Durkiewicz was forced to leave Edward Jones, but did not attempt to take any of the clients she had

developed for Edward Jones with her when she left. Instead, Edward Jones continued to reap the benefits and income generated from the clients Durkiewicz brought to the Firm.

45.     After Durkiewicz's employment ended, Edward Jones sent her a notice stating that she owed Edward Jones $75,000 in "training costs," well in excess of the amount she had earned during her entire employment at Edward Jones.

46.     As a result of Edward Jones's unlawful conduct, Durkiewicz was denied wages owed and suffered other damages.

**Plaintiff David Bowles**

47.     Plaintiff Bowles, then a recent college graduate, was hired by Edward Jones in January 2014. Like other FA Trainee hires, Bowles was required to sign an FA Agreement indicating he initially would be an hourly employee and would be required to pay $75,000 in "training costs" if his employment ended for any reason within three years of reaching "can sell" status and certain other conditions were met.

48.     Consistent with Bland's experience, Edward Jones advised Bowles that he should work very hard to succeed and build his knowledge base and book of business. Indeed, Edward Jones also loaned Bowles a laptop computer so that he could work before and after office hours and on weekends, developing his knowledge base and building his book of business for Edward Jones.

49.     During the initial phase of his training period, Bowles often worked well in excess of 45 hours per week, and in the second phase, in excess of 60 hours per week.

50.     Bowles did not receive the meaningful training or lucrative career Edward Jones promised.

51.     Like many FA Trainees lured to Edward Jones with false promises, Bowles was forced to leave Edward Jones, but did not attempt to take any of the clients he had developed for Edward Jones with him when he left.  Instead, Edward Jones continued to reap the benefits and income generated from the clients Bowles brought to the Firm.

52.     On February 5, 2018, long after Bowles's employment ended, Edward Jones sent Bowles a notice that he owed Edward Jones $75,000 in "training costs," well in excess of the amount he had earned during his entire employment at Edward Jones.

53.     As a result of Edward Jones's unlawful conduct, Bowles was denied wages owed and suffered other damages.

**Plaintiff Adam Reyes**

54.     Plaintiff Reyes, then a recent college graduate, was hired by Edward Jones in October 2015.  Like other FA Trainee hires, Reyes was required to sign an FA Agreement indicating he initially would be an hourly employee and would be required to pay $75,000 in "training costs" if his employment ended for any reason within three years of reaching "can sell" status, and certain other conditions were met.

55.     Consistent with Bland's experience, Edward Jones advised Reyes that he should work very hard to succeed and build his knowledge base and book of business.  Indeed, Edward Jones provided Reyes a laptop computer so that he could work before and after office hours and on weekends, developing his knowledge base and building his book of business for Edward Jones.

56.     During the initial phase of his training period, Reyes often worked well in excess of 45 hours per week, and in the second phase, in excess of 60 hours per week.

13

57.     Reyes did not receive the meaningful training or lucrative career Edward Jones promised.

58.     Like many FA Trainees lured to Edward Jones with false promises, Reyes was forced to leave Edward Jones, but did not attempt to take any of the clients he had developed for Edward Jones with him when he left.  Instead, Edward Jones continued to reap the benefits and income generated from the clients Reyes brought to the Firm.

59.     On January 30, 2018, well after Reyes' employment ended, Edward Jones sent Reyes a notice that he owed Edward Jones $75,000 in "training costs," well in excess of the amount he had earned during his entire employment at Edward Jones.

60.     As a result of Edward Jones's unlawful conduct, Reyes was denied wages owed and suffered other damages.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

61.     Plaintiffs seek collective action treatment of their claims under the Fair Labor Standards Act pursuant to 29 U.S.C. § 216(b) on behalf of all FA Trainees who worked in non-exempt positions.

62.     Plaintiffs are similarly situated to FA Trainees who worked in non-exempt positions, were subject to the same compensation schedule, were required to execute the same FA Agreement, and were subject to Edward Jones's unlawful practice of being forced to work without being properly paid for hours worked, upon threat of being forced to pay "training costs."

63.     Plaintiffs Durkiewicz, Bowles, and Reyes seek class certification of Illinois claims under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") on behalf of FA Trainees hired by Edward Jones to work in Illinois who were not paid for hours worked over 45

hours per week in the initial phase of their training and 60 hours in the next phase and/or who were required to execute agreements requiring their payment of so-called "training costs" in the event their employment ended for any reason within three years after their "can sell" date and certain other conditions were met.

64.     Plaintiffs seek class certification of Missouri claims under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") on behalf of FA Trainees hired by Edward Jones who were not paid for hours worked over 45 hours per week in the initial phase of their training and 60 hours in the next phase and/or who were required to execute agreements requiring their payment of so-called "training costs" in the event their employment ended for any reason within three years after their "can sell" date and certain other conditions were met.

65.     The proposed state law classes of FA Trainees meet all requirements of Rule 23(a) as they are so numerous that joinder is impracticable, the classes present common questions of law and fact, and the Plaintiffs identified will fairly and adequately protect the interests of the proposed classes.  Common questions of law and fact for the state law classes include whether the alleged unlawful practices violated applicable state laws.  Answers to those common questions depend on common evidence, including Edward Jones's mandatory FA Training program, compensation schedule, and FA Employment Agreement.

66.     Plaintiffs seeks certification of liability and injunctive and declaratory relief classes under Rule 23(b)(2) and 23(c)(4), and/or certification of broader classes under Rule 23(b)(3).  All requirements of class certification are met by the proposed classes.

## COUNT I

### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. § 201 *et seq.*
### (NATIONWIDE COLLECTIVE ACTION)

67.     Plaintiffs incorporate all allegations above as though fully stated herein.

**Failure to Pay Wages "Free and Clear"**

68.     Consistent with the requirements of the Fair Labor Standards Act ("FLSA"), 29 C.F.R. § 531.35, Edward Jones was required to pay to Plaintiffs and those similarly situated all wages they had earned fully, unconditionally, and "free and clear" of any claim by Edward Jones to a set off, kickback or other recoupment.  To the extent that Edward Jones paid Plaintiffs and those similarly situated a wage on the condition that Plaintiffs pay back "training costs" up to $75,000, those wages were paid conditionally and not "free and clear" as required by the FLSA.

**Failure to Pay Minimum Wage / Overtime**

69.     The FLSA generally requires that employees receive wages of not less than $7.25 per hour.  29 U.S.C. § 206.

70.     The FLSA further requires that applicable employees receive at least one and a half times their normal rate of wages for any hours worked in excess of 40 hours in a week.  29 U.S.C. § 207.  Plaintiffs and all those similarly situated are not exempt from the overtime requirements of the Fair Labor Standards Act during the time they worked in non-exempt positions.  *See* 29 U.S.C. § 213.

71.     Plaintiffs and all those similarly situated worked well in excess of 45-60 hours per week in the non-exempt positions.  However, Edward Jones failed to compensate Plaintiffs and others similarly situated beyond their normal rate of pay on weeks they worked over 45-60 hours.

72.    Additionally, Edward Jones forced Plaintiffs and all those similarly situated to sign an agreement to pay "training costs" if they were fired or resigned from Edward Jones within the first three years after receipt of their "can sell" status under certain circumstances. Such payment of "training costs" reduces the wages of Plaintiffs to below the minimum wage required by 29 U.S.C. § 206 and/or below the overtime wage required by 29 U.S.C. § 207.

**Recordkeeping**

73.    The FLSA requires employers accurately to record, report, and preserve records of hours worked.

74.    Defendant failed to fulfill its obligations accurately to record, report, and preserve records of hours worked by Plaintiffs and all those similarly situated.

75.    As a direct and proximate result of Defendants' conduct, Plaintiffs and all others similarly situated have been underpaid for the work they performed for Edward Jones.

## COUNT II

**VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT**
**820 ILCS 115/1 *et seq.***
**(ILLINOIS RULE 23 CLASS)**

76.    Plaintiffs incorporate all allegations above as though fully stated herein.

77.    The Illinois Wage Payment and Collection Act prohibits an employer from taking back wages that have been paid to employees.

78.    In seeking reimbursement for "training costs," Edward Jones unlawfully attempts to take back wages in which Plaintiffs Durkiewicz, Bowles, and Reyes and all similarly situated Illinois FA Trainees have a vested right, causing them harm.

79.    Plaintiffs Durkiewicz, Bowles, and Reyes and all similarly situated Illinois FA Trainees entered into agreements with Defendant that they would be paid for all hours worked and would receive overtime compensation during the initial training period of their employment.

80.     Plaintiffs Durkiewicz, Bowles, and Reyes and similarly situated Illinois FA Trainees worked well in excess of 40 hours per week during the time they held non-exempt positions but were not paid for all hours worked.

81.     Defendant permitted and encouraged Plaintiffs Durkiewicz, Bowles, and Reyes and all similarly situated Illinois FA Trainees to work but not be paid for hours over 45-60 hours per week.

82.     As a direct and proximate result of Defendants' conduct, Plaintiffs Durkiewicz, Bowles, and Reyes and all similarly situated Illinois FA Trainees have been underpaid for the work they performed as FA Trainees for Edward Jones, in violation of the Illinois Wage Payment and Collection Act.

**COUNT III**

**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW**
**820 ILCS 105/1 *et seq.* 29**
**(ILLINOIS RULE 23 CLASS)**

83.     Plaintiffs incorporate all allegations above as though fully stated herein.

84.     The Illinois Minimum Wage Law generally requires that employees receive wages of not less than $8.25 per hour.  820 ILCS 105/4(a)(1).

85.     The Illinois Minimum Wage Law further requires that applicable employees receive at least one and a half times their normal rate of wages for any hours worked in excess of 40 hours in a week.  820 ILCS 105/4a(1).

86.     Plaintiffs Durkiewicz, Bowles, and Reyes and all similarly situated Illinois FA Trainees were recruited by Edward Jones as FA Trainees and earned and were paid wages. Durkiewicz, Bowles, and Reyes and all similarly situated Illinois FA Trainees are not exempt

from the overtime requirements of the Illinois Minimum Wage Law during the time they held
non-exempt positions. *See* 820 ILCS 105/4a(2).

87.     Plaintiffs Durkiewicz, Bowles, and Reyes and all similarly situated Illinois FA
Trainees worked well in excess of 45-60 hours per week in non-exempt positions. However,
Edward Jones failed to compensate Plaintiffs beyond their normal rate of pay on weeks they
worked over 45-60 hours.

88.     Edward Jones forced Durkiewicz, Bowles, and Reyes and all similarly situated
Illinois FA Trainees to sign agreements to pay the firm "training costs" if they left Edward Jones
within three years of reaching "can sell" status under certain circumstances.

89.     Payment of training costs has the effect of reducing the net income earned by
Plaintiffs and similarly situated Illinois FA Trainees to fall below the minimum wage required by
820 ILCS 105/4(a)(1).

90.     As a direct and proximate result of Defendants' conduct, Durkiewicz, Bowles,
and Reyes and all similarly situated Illinois FA Trainees have been underpaid for the work they
performed for Edward Jones.

<u>**COUNT IV**</u>

**UNJUST ENRICHMENT**
**(ILLINOIS RULE 23 CLASS)**

91.     Plaintiffs incorporate all allegations above as though fully stated herein.

92.     Plaintiffs Durkiewicz, Bowles, and Reyes and other similarly situated Illinois FA
Trainees developed and serviced client accounts and assets for Edward Jones during their
employment, which generated revenues for Edward Jones.

93.     After the employment of Plaintiffs and other similarly situated Illinois FA
Trainees was terminated, Edward Jones retained the client accounts procured by FA Trainees,

19

which continued to generate fees and revenues for Edward Jones.  Edward Jones did not

compensate the FA Trainees for the benefits the Firm retained as a result of the FA Trainees'

work and efforts, but instead sought to recover their wages as "training costs."

**COUNT V**

**BREACH OF CONTRACT**
**(ILLINOIS RULE 23 CLASS)**

94.     Plaintiffs incorporate all allegations above as though fully stated herein.

95.     Defendant offered, and Plaintiffs Durkiewicz, Bowles, and Reyes and similarly

situated Illinois FA Trainees accepted, employment agreements under which they joined Edward

Jones as FA Trainees.

96.     In consideration of their employment agreements, Plaintiffs Durkiewicz, Bowles,

and Reyes and other similarly situated Illinois FA Trainees provided Defendant with their time

and services to acquire accounts, commissions, and revenues for Defendant, and Defendant

provided Plaintiffs Durkiewicz, Bowles, and Reyes and other similarly situated Illinois FA

Trainees with compensation.

97.     The employment agreements provided that, during their time as FA Trainees,

Plaintiffs Durkiewicz, Bowles, and Reyes and other similarly situated Illinois FA Trainees would

be enrolled in Defendants' FA Training program to prepare them to become Financial Advisors.

The agreements also provided that the FA Trainees would have to pay up to $75,000 in "training

costs," which would have to be repaid if their employment with Defendant was terminated for

any reason within three years after receipt of "can sell" status and certain other conditions were

met.

20

98.     Defendant breached the employment agreements by failing to provide Plaintiffs Durkiewicz, Bowles, and Reyes and similarly situated Illinois FA Trainees with training. Notwithstanding its failure to train them, Defendant demanded payment of "training costs."

99.     As a direct and proximate result of Defendants' conduct, Plaintiffs Durkiewicz, Bowles, and Reyes and similarly situated Illinois FA Trainees have suffered damages.

<u>**COUNT VI**</u>

**MISSOURI MINIMUM WAGE LAW**
**MISSOURI ANNOTATED STATUTES § 290.500 *et seq.***
**(MISSOURI RULE 23 CLASS)**

100.     Plaintiffs incorporate all allegations above as though fully stated herein.

101.     Edward Jones forced Plaintiffs and all similarly situated FA Trainees to sign agreements to pay the Firm "training costs" if they left Edward Jones within three years of reaching "can sell" status under certain circumstances. The agreements state they are to be governed by the laws of Missouri.

102.     Payment of training costs has the effect of reducing the income earned by Plaintiffs and similarly situated FA Trainees to fall below the minimum wage required by the Missouri Minimum Wage Law.

103.     The Missouri Minimum Wage Law generally requires that employees receive wages of not less than $7.85 per hour. Mo. Ann. Stat. §290.502.

104.     The Missouri Minimum Wage Law further requires that applicable employees receive at least one and a half times their normal rate of wages for any hours worked in excess of 40 hours in a week. Mo. Ann. Stat. §290.503.

105.     Plaintiffs and all similarly situated FA Trainees were recruited by Edward Jones as Financial Advisor Trainees and earned and were paid wages. Plaintiffs and all similarly

situated FA Trainees are not exempt from the overtime requirements of the Missouri Minimum Wage Law during the time they held non-exempt positions.

106.    Plaintiffs and all similarly situated FA Trainees worked well in excess of 45-60 hours per week in non-exempt positions.  However, Edward Jones failed to compensate Plaintiffs and all similarly situated FA Trainees beyond their normal rate of pay on weeks they worked over 45-60 hours.

107.    As a direct and proximate result of Defendants' conduct, Plaintiffs and all similarly situated FA Trainees have been underpaid for the work they performed for Edward Jones.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all others similarly situated respectfully request that this Court find against Defendant as follows:

a.    Certify this case for collective and class action treatment, authorize notice, and equitably toll FLSA limitations periods;

b.    Designate Plaintiffs as Class Representatives for the proposed collective and class action and the proposed classes and designate Plaintiffs' counsel as Class Counsel;

c.    Permanently enjoin Defendant from seeking to collect any training costs from any FA Trainees;

d.    Declare that Defendants' conduct, policies, and practices are unlawful and violate the Fair Labor Standards Act and the Illinois and Missouri wage laws set forth above;

e.       Award Plaintiffs and all others similarly situated the amount of their losses

suffered, including any unpaid wages owed;

f.       Award Plaintiffs and all others similarly situated liquidated damages;

g.       Award Plaintiffs and all others similarly situated statutory interest and/or

penalties;

h.       Award Plaintiffs and all others similarly situated the value of all compensation

and benefits lost and that they will lose in the future as a result of Edward Jones's

unlawful conduct;

i.       Award Plaintiffs and all others similarly situated prejudgment and post-judgment

interest and attorneys' fees and costs as provided by law;

j.       Award Plaintiffs and all others similarly situated such other make whole

equitable, injunctive, and legal relief as this Court deems just and proper; and

k.       Award Plaintiffs and all others similarly situated such other relief as is available

under applicable law and this Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of

Civil Procedure.

Respectfully submitted on behalf of Plaintiffs and those
similarly situated,

s/ *Suzanne E. Bish*
STOWELL & FRIEDMAN, LTD.

Linda D. Friedman
Suzanne E. Bish  (#06242534)
George S. Robot
STOWELL & FRIEDMAN, LTD.
303 W. Madison St.
Suite 2600

Chicago, Illinois  60606
(312) 431-0888
Lfriedman@sfltd.com
sbish@sfltd.com
grobot@sfltd.com