**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WAYNE BLAND, et al., | ) | |
| Plaintiffs, | ) | Civil No. 18-cv-01832 |
| | ) | |
| v. | ) | Honorable Robert M. Dow, Jr. |
| | ) | |
| EDWARD D. JONES & CO., L.P., et al., | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD ......................................................................................... 3

III.   FACTUAL BACKGROUND............................................................................. 4

IV.   ARGUMENT ...................................................................................................... 7

    A.  Counts I-III and VI Suffer From Fatal and Incurable Pleading Defects. ....................... 7

        1.  Plaintiffs fail to state a claim relating to their agreement to repay training costs and do not have standing to bring such a claim. ............................................................... 7

        2.  Plaintiffs fail to allege any damages arising from their training cost repayment obligations, a critical element of their claims............................................................. 8

        3.  Plaintiffs fail to adequately plead a claim for unpaid overtime wages........................ 9

    B.  Counts I-III and VI Fail Because Plaintiffs' Agreement to Repay Training Costs is Not a Kick-Back Under the FLSA or the Illinois or Missouri Wage Statutes. .................... 11

    C.  Plaintiffs' Misclassification Claim Asserted in Count I Is Insufficiently Pled. ............ 16

    D.  Plaintiffs' Claims in Count VI Are Insufficiently Pled and Are Also Time Barred. .... 20

    E.  Plaintiff Bowles's Claims under Count I and Count III are Also Time-Barred............ 22

    F.  Plaintiffs Fail to State a Cognizable Claim for Rescission in Count IV. ...................... 22

    G.  Plaintiffs Fail to State an Actionable Unjust Enrichment Claim in Count V................ 23

V.   CONCLUSION ................................................................................................. 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663 (7th Cir. 2007) ........... 11

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009); ............................................................................. 3

*Avery v. Chariots for Hire*, 748 F. Supp. 2d 492 (D. Md. 2010) ................................................ 7

*Bachrach v. Chase Inv. Servs. Corp.*, 2007 WL 3244186 (D.N.J. Nov. 1, 2007) ....................... 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) ............................................................... 3

*Booe v. Shadrick*, 369 S.E.2d 554 (N.C. 1988) ................................................................... 24

*Brannock v. Fletcher*, 155 S.E.2d 532 (N.C. 1967) .............................................................. 23

*City of Oakland v. Hassey*, 78 Cal. Rptr. 3d 621 (Cal. Ct. App. 2008) ................................ 13, 14

*Clark v. EmCare, Inc.*, 2017 WL 1073342 (C.D. Cal. Mar. 21, 2017) ...................................... 16

*Columbia Wholesale Co. v. Scudder May*, 440 S.E.2d 129 (S.C. 1994) .................................... 25

*Earthscapes Unlimited v. Ulbrich*, 703 S.E.2d 221 (S.C. 2010) ............................................ 24

*Ebner v. Haverty Furniture Co.*, 122 S.E. 578 (S.C. 1924) ................................................... 23

*Enger v. Chicago Carriage Cab*, 812 F.3d 565 (7th Cir. 2016) ................................................ 8

*Floyd v. Excel Corp.*, 51 F. Supp. 2d 931 (C.D. Ill. 1999) .................................................... 6

*Garcia v. M.T. Food Serv., Inc.*, 2014 WL 6461937 (N.D. Ill. Nov. 17, 2014) .......................... 9

*Gordon v. City of Oakland*, 627 F.3d 1092 (9th Cir. 2010) ...................................... 12, 13, 14, 15

*Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681 (Ill. App. Ct. 2005) ........................................... 24

*Heder v. City of Two Rivers*, 29 5 F.3d 777 (7th Cir. 2002) ................................... 12, 13, 14, 15, 17

*Hein v. PNC Fin. Servs. Grp., Inc.*, 511 F. Supp. 2d 563 (E.D. Penn. 2007) .................. 18, 19, 20

*Hertz v. RAKS Hospitality*, 196 S.W.3d 536 (Mo. App. E.D. 2006) ....................................... 25

*Heuberger v. Smith*, 2017 WL 3923271 (N.D. Ind. Sept. 7, 2017) ........................................... 7

*Hickman v. Wells Fargo Bank, N.A.*, 683 F. Supp. 2d 779 (N.D. Ill. 2010) ............................... 24

*Howard v. Turnbull*, 316 S.W.3d 431 (Mo. App. W.D. 2010) ............................................... 24

*Hughes v. Scarlett's G.P., Inc.*, 2016 WL 4179153 (N.D. Ill. Aug. 8, 2016) ................. 7, 8, 9, 10

*In re Barnes & Noble Pin Pad Litig.*, 2016 WL 5720370 (N.D. Ill. Oct. 3, 2016) ...................... 9

*In re Morgan Stanley Smith Barney LLC Wage & Hour Lit.*, 2017 WL 772904 (D.N.J. Feb. 28, 2017) .................................................................................................. 18, 19, 20

*Jackson v. Old EPT, LLC*, 2014 WL 12696886 (W.D. Mo. Dec. 8, 2014) .................................. 7

*Kavanagh v. KLM Royal Dutch Airlines*, 566 F. Supp. 242 (N.D. Ill. 1983) ............................ 7, 8

*Ketner v. Branch Banking & Tr. Co.*, 143 F. Supp. 3d 370 (M.D.N.C. 2015) ...................... 15, 17

*Landy v. Heller, White & Co.*, 783 F. Supp. 125 (S.D.N.Y. 1991) ................................ 4

*Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920 (Ill. App. Ct. 2009) ........................ 23

*Pardo v. Mecum Auction Inc.*, 77 F. Supp. 3d 703 (N.D. Ill. 2014) ............................... 23

*Park v. FDM Group*, 2017 WL 946298 (S.D.N.Y. Mar. 9, 2017) ......................... 13, 14

*Patel v. Pate*, 128 S.W.3d 873 (Mo. App. W.D. 2004) ............................... 23

*Porous Media v. Pall*, 186 F.3d 1077 (8th Cir. 1999) ............................... 4

*S.E. Shelter Corp. v. BTU, Inc.*, 572 S.E.2d 200 (N.C. Ct. App. 2002)........................ 25

*Sadler v. Retail Props. of Am.*, 2014 WL 2598804 (N.D. Ill. June 10, 2014) ............................ 25

*Schneider v. Space Sys./Loral*, 2011 WL 4344232 (N.D. Cal. Sept. 15, 2011)..................... 16, 18

*Swanson v. Citibank*, 614 F.3d 400 (7th Cir. 2010)................................... 3

*Trujillo v. Mediterranean Kitchens, Inc.*, 2017 WL 2958240 (N.D. Ill. July 11, 2017)................ 9

*Tsyn v. Wells Fargo Advisors, LLC*, 2016 WL 612926 (N.D. Cal. Feb. 16, 2016) ..................... 18

*Vega v. Mid Am. Taping & Reeling, Inc.*, 2018 WL 2933676 (N.D. Ill. June 12, 2018) .............. 9

*Wickenhauser v. Edward D. Jones & Co.*, 953 F. Supp. 286 (E.D. Mo. 1996)........................ 21

*Wilson v. Pioneer Concepts, Inc.*, 2011 WL 3950892 (N.D. Ill. Sept. 1, 2011)........................... 10

*Wright v. Associated Ins.*, 29 F.3d 1244 (7th Cir. 1994) ................................ 4

## Statutes

29 C.F.R. § 531.35 ...................................................... 11, 13

29 C.F.R. § 541.200 ...................................................... 17

29 C.F.R. § 541.203(b) ...................................................... 18

29 C.F.R. § 541.700(a)...................................................... 17

29 C.F.R. § 790.21(b) ...................................................... 22

29 U.S.C. § 216(b) ...................................................... 9

29 U.S.C. § 255(a) ...................................................... 22

820 ILCS 105/12(a) ...................................................... 22

Mo. Rev. Stat. §290.505.4 ...................................................... 7

Mo. Rev. Stat. §290.527 ...................................................... 21

**Rules**

Fed. R. Civ. P. 11(c)(3) .......................................................................................... 20

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 3

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 3

**Other Authority**

Dep't of Labor, Wage & Hour Div., Op. Ltr. Fair Labor Standards Act, No. FLSA2006-43, 2006 WL 3832994 (Nov. 27, 2006) ............................................................................ 18, 19

FINRA Rule 2090 .................................................................................................... 19

FINRA Rule 2111(a) ................................................................................................. 19

Defendants Edward D. Jones & Co., L.P. ("Edward Jones" or "the Firm") and The Jones Financial Companies, L.L.L.P. (collectively "Defendants") hereby submit this memorandum of law in support of their motion to dismiss Plaintiffs' Amended Class and Collective Action Complaint ("Complaint"), ECF 35.

Plaintiffs' original pleading asserted six causes of action challenging Edward Jones's contractual right to seek recoupment of training costs from certain departing financial advisors ("FAs") and alleging that Edward Jones discourages FA trainees from reporting overtime hours. After Defendants filed a motion to dismiss, *see* ECF 23, Plaintiffs were given leave to file an amended complaint. ECF 32. Despite having ample opportunity to replead with full knowledge of the grounds for dismissal, Plaintiffs' Complaint still fails to set forth a plain statement illustrating that they are entitled to any relief. The Complaint should therefore be dismissed.

## I.     <u>INTRODUCTION</u>

Through its training program, Edward Jones offers FA trainees a platform to advance their careers in a difficult and competitive profession – the retail brokerage business. With no immediate financial return, Edward Jones bears the entire cost of a lengthy training program, which includes providing FA trainees the instruction, preparation, and knowledge necessary for the Series 7 and 66 securities licensure exams required before FA trainees can register as financial representatives; in-depth industry training at Edward Jones's home offices; strategies for acquiring and retaining clients; and business planning and execution techniques. Edward Jones bears the substantial expense of such training and instruction so that upon entry into the profession, the FA trainee has the certification, knowledge, and skills needed to succeed as a financial advisor. To prevent FA trainees from exploiting this valuable Firm-paid training and denying Edward Jones its bargained-for return on investment, FA trainees agree as part of their employment to repay training costs if they: (1) leave

Edward Jones within three years of the date they begin servicing Edward Jones's clients (their "can-sell" date); (2) maintain their Series 7 and 66 registrations; and (3) work in the financial services industry as a registered financial representative.

Each of the Plaintiffs received this training at no cost to them, but within three years quit Edward Jones and continued to work in the financial services industry as a registered financial representative, triggering the agreed-upon contractual obligation to repay training costs. Plaintiffs now claim that Edward Jones cannot recoup its significant up-front investment in their training. Specifically, Plaintiffs claim that their agreement to repay training costs is an unlawful kick-back of wages (Counts I, II, III and VI); that Edward Jones failed to pay its FA trainees for all hours worked (Counts I, II, III and VI); that Edward Jones misclassified Plaintiffs as exempt employees after they finished their training and started working as FAs (Count I); that the disputed contract provision should be rescinded (Count IV); and that Edward Jones was unjustly enriched by retaining its own clients after Plaintiffs left to work for a competitor (Count V).

Edward Jones moves to dismiss this action. *First*, Plaintiffs do not allege any deduction of training costs was made from their paychecks, nor do they allege they repaid any training costs. Plaintiffs therefore do not state a claim for either an unlawful reduction in or kick-back of wages and do not have standing to assert such claims. Similarly, Plaintiffs fail to allege they have been damaged by the provisions of their employment agreements that require them to repay Edward Jones the cost of their training. And, Plaintiffs' claim that Edward Jones failed to pay FA trainees for unreported overtime is insufficiently detailed to be plausible on its face.

*Second*, even if Plaintiffs have set forth facts sufficient to assert their training cost claims, courts routinely find that arrangements requiring employees to repay an employer's losses related to their up-front investment in training do not constitute a failure to pay minimum or overtime wages or

2

an unlawful kick-back of wages.

*Third,* formal guidance from the United States Department of Labor ("DOL"), as well as federal courts across the country, all support Edward Jones's classification of Plaintiffs as overtime exempt after they became licensed FAs and started servicing Edward Jones's clients.

*Fourth*, because Plaintiffs do not argue that there was any agreement to rescind the contract, or substantial nonperformance by Edward Jones, and since Plaintiffs already accepted Edward Jones's training, their rescission claim fails as a matter of law.

*Fifth*, the existence of a contract precludes Plaintiffs' unjust enrichment claim. Even if this claim could proceed in the face of a contract that governs the dispute, Plaintiffs have failed to allege facts sufficient to establish that Edward Jones was unjustly enriched to Plaintiffs' detriment by Edward Jones retaining client relationships that belonged to it in the first instance and in which Plaintiffs agreed in writing that they never had any ownership interest.

*Finally*, Plaintiffs' claims under the Missouri minimum wage statute are time-barred and merit dismissal because they allege no facts showing they are covered by the statute.

## II.     LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed if the facts do not state a claim for relief that is plausible on its face. *Swanson v. Citibank*, 614 F.3d 400, 403 (7th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Id*. Rule 12(b)(1) provides for dismissal for lack of subject matter jurisdiction.

Plaintiffs were permitted to amend their pleading after Defendants filed an initial motion to dismiss. *See* Doc. 32. Plaintiffs have therefore already had the opportunity to replead all of their

claims with notice of the grounds for dismissal. Further amendment should not be permitted, and the Complaint should be dismissed with prejudice. *See*, *e.g.*, *Landy v. Heller, White & Co.*, 783 F. Supp. 125, 133 (S.D.N.Y. 1991) ("dismissal of a complaint with prejudice is proper when the complaint has been amended previously").

### III.    FACTUAL BACKGROUND

All four named Plaintiffs participated in the Edward Jones's FA training program. Compl., ECF 35 ¶¶ 10-14. At the time of hire, Plaintiffs executed employment agreements that "obligate[d] each FA Trainee to pay … 'training costs' of up to $75,000 if his or her Edward Jones employment ends for any reason and the FA Trainee 'accept[s] continued employment with any entity … engaged in the sale of securities and/or insurance business' within three years of receipt of a 'can sell' date (the date at which Edward Jones directs FA Trainees to solicit and sell to clients.)" *Id.* ¶ 16; *see also* Exh. 1, Employment Agreement.[1] In this regard, Plaintiffs "agree[d] to reimburse Edward Jones the reasonable cost of the training Edward Jones has provided … including, but not limited to, the cost of the selection and hiring," and acknowledged that the $75,000 repayment amount "**bears a reasonable relationship to the computed damages Edward Jones would suffer from a breach by you and that Edward Jones will suffer demonstrable loss as a result of your breach**." Exh. 1 ¶ 21 (emphasis added).

Plaintiffs allege Edward Jones's training program is comprised of "a 17-week period," the first eight weeks of which Plaintiffs studied for the Series 7 and 66 licensing examinations,[2] and the balance of which Plaintiffs attended on-site training in either Missouri or Arizona and learned and

---

[1]    A court may consider materials embraced by the pleadings in ruling on a motion to dismiss without converting it into one for summary judgment. *Porous Media v. Pall*, 186 F.3d 1077, 1079 (8th Cir. 1999). This includes contracts that are alleged to exist in a complaint. *Wright v. Associated Ins.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

[2]    The Series 7 and 66 examinations that are administered by the Financial Industry Regulatory Authority ("FINRA") are also referred to as the General Securities Representative Examination and the North American Securities Administrators Association Uniform Combined State Law Examination, respectively.

practiced strategies to develop prospective clients. *Id.* ¶¶ 17-19. All four Plaintiffs successfully completed Edward Jones's training program and achieved a can-sell date,[3] but subsequently left his or her employment with Edward Jones. *Id.* ¶¶ 38, 40, 46, 49, 55, 58, 64, 67. Thereafter, the Firm sent letters to each Plaintiff requesting repayment for training costs pursuant to each Plaintiff's employment agreement. *Id.* ¶¶ 41, 50, 59, 68; *see* Exh. 1.

Plaintiffs generally allege Edward Jones enforces training cost obligations "where the conditions Edward Jones imposed were not met." Compl. ¶ 30. However, no Plaintiff alleges that he or she did not meet any of the conditions set forth in their agreements that would give rise to Edward Jones's right to seek recoupment for these costs. Moreover, while each Plaintiff alleges that he or she received a letter requesting repayment, *id.* ¶¶ 41, 50, 59, 68, none of the Plaintiffs allege they actually repaid any training costs to Edward Jones. And, although Plaintiffs allege they were not paid minimum wage or overtime because the "payment of 'training costs' reduces the wages of Plaintiffs to below the minimum wage ... and/or below the overtime wage required," *id.* ¶ 81, Plaintiffs do not allege that Edward Jones actually made any deductions from their regular or overtime pay during their employment or that the Firm otherwise failed to pay their full wages for all hours they reported. Similarly, although Plaintiffs allege in a conclusory manner that "[u]nder its policies and practices, Edward Jones knowingly discourages non-exempt FA Trainees from accurately reporting all of the hours they work," *id.* ¶ 22, Plaintiffs do not present a single factual allegation to support this contention, much less contend that they were individually discouraged from reporting overtime. *See id.* ¶¶ 34-69. Rather, each Plaintiff simply includes a general allegation that Edward Jones demanded $75,000 in training cost reimbursement and cursorily alleges

---

[3] Plaintiffs achieve "can-sell" status after completing Edward Jones's training and obtaining their Series 7 and 66 registrations, which are required by FINRA for brokers to trade and sell securities. Compl. ¶ 19. Plaintiffs allege this is the date "at which Edward Jones directs FA Trainees to solicit and sell" to prospective clients. *Id.* ¶¶ 16, 19.

that he or she was denied wages owed. *Id.* ¶¶ 41-42, 50-51, 59-60, 68-69. Notably, Plaintiffs each generically contend that Edward Jones did not pay him or her "for all of the hours and overtime" he or she worked, *id.* ¶¶ 39, 47, 56, 65, but no Plaintiff identifies even a single week for which this contention is true.

The Complaint asserts six causes of action that can be divided into five categories:[4]

**(1) Training Cost Reimbursement Claims under Federal (Count I) and State (Counts II, III and VI) Law**: Plaintiffs allege that their obligation to repay training costs has the effect of reducing their wages to below the minimum wage and/or the overtime wage required by law. *See*, *e.g.*, *id.* ¶ 81. In this regard, Plaintiffs contend that Edward Jones failed to pay minimum and overtime wages "free and clear" because the training cost repayment obligations constitute an unlawful "kick-back." *Id.* ¶¶ 25, 77, 97, 107, 127.

**(2) FA Trainee Overtime Claim Under Federal (Count I) and State (Counts II, III and VI) Law**: Plaintiffs allege that as FA trainees they "worked well in excess of 40 hours per week" but that they "were not paid for all hours worked." *Id.* ¶ 98; *see also id.* ¶¶ 80, 105, 129 (alleging Edward Jones failed to compensate Plaintiffs "beyond their normal rate of pay on weeks they worked over 45-60 hours").

**(3) FA Misclassification Claim Under Federal Law (Count I)**: Plaintiffs contend that upon their advancement from FA trainee to a licensed FA, Edward Jones misclassified them as exempt from the FLSA's overtime requirements. *Id.* ¶¶ 23, 82-88.

**(4) Rescission Claim under State Law (Count IV)**: Plaintiffs allege that the disputed training cost recoupment provision is unlawful and should be rescinded. *Id.* ¶¶ 109-116.

---

[4]   Any separate claim for an alleged "recordkeeping" violation under the FLSA (*see* Count I, Compl. ¶¶ 89-92) should be dismissed as the FLSA's recordkeeping requirements do not establish a private cause of action for individual litigants. *Floyd v. Excel Corp.*, 51 F. Supp. 2d 931, 934 n.5 (C.D. Ill. 1999) (citations omitted).

**(5) Unjust Enrichment under State Law (Count V)**: Plaintiffs allege that Edward Jones was unjustly enriched by retaining the client accounts Plaintiffs opened while they were employed by Edward Jones. *Id.* ¶¶ 117-121.

## IV.    ARGUMENT

**A.     Counts I-III and VI Suffer From Fatal and Incurable Pleading Defects.**

**1.     Plaintiffs fail to state a claim relating to their agreement to repay training costs and do not have standing to bring such a claim.**

The claims Plaintiffs assert based upon the training cost reimbursement provisions of their employment agreements fail as a matter of pleading, and Plaintiffs lack standing to bring the same. Plaintiffs generally claim that the repayment of training costs dilutes the wages paid to Plaintiffs to below the minimum or overtime wage required by the FLSA, as well as the Illinois and Missouri wage and hour laws. *See* Compl. ¶¶ 81, 96, 107, 127. These claims necessarily fail because Plaintiffs make no allegation (nor could they) that there was any deduction of training costs made from their wages for the repayment of training expenses. *See*, *e.g.*, *Heuberger v. Smith*, 2017 WL 3923271, \*10 (N.D. Ind. Sept. 7, 2017) (dismissing with prejudice FLSA claim for unlawful deduction where "paychecks demonstrate[d] that no deductions were taken from Plaintiff's minimum wages"); *Avery v. Chariots for Hire*, 748 F. Supp. 2d 492, 502 (D. Md. 2010) (plaintiffs failed to state an FLSA claim for unpaid wages where "plaintiffs have not alleged any facts that [the defendants] actually deducted wages from their paychecks").

Because Illinois and Missouri wage and hour laws are coextensive with the FLSA, Plaintiffs' state law claims should meet the same fate of dismissal. *Hughes v. Scarlett's G.P., Inc.*, 2016 WL 4179153, at \*4 (N.D. Ill. Aug. 8, 2016) ("Claims brought under the FLSA and IMWL are evaluated using the same general analysis." (citation omitted)); *Jackson v. Old EPT, LLC*, 2014 WL 12696886, at \*1 n.2 (W.D. Mo. Dec. 8, 2014) ("The MMWL is interpreted the same as the FLSA, therefore

Defendants' arguments address both claims." (citing Mo. Rev. Stat. § 290.505.4)); *see Kavanagh v. KLM Royal Dutch Airlines*, 566 F. Supp. 242, 245 (N.D. Ill. 1983) (dismissing the plaintiff's IWPCA claim with prejudice where defendant "never made a deduction from his salary, the *sine qua non* of a claim under the Act").[5]

Plaintiffs do not (and cannot) allege that Edward Jones actually made any deductions from their pay to satisfy Plaintiffs' repayment obligations, or that they have actually repaid any of these amounts to Edward Jones. Because no deductions or repayments were ever made, Plaintiffs also lack standing to bring any such claim. For these reasons, Plaintiffs' minimum wage and overtime claims under both the FLSA and state wage and hour laws arising from their contractual obligation to repay training costs (Counts I–III and VI) should be dismissed.

### 2. Plaintiffs fail to allege any damages arising from their training cost repayment obligations, a critical element of their claims.

Plaintiffs' training cost repayment claim should also be dismissed for another independently adequate reason: Plaintiffs have failed to plead an essential element – injury or damage. Stated differently, Plaintiffs' claims for the alleged denial of minimum and overtime wages based on their training cost repayment obligation is bereft of any allegation that Edward Jones withheld or recovered otherwise legally-compliant wages paid to Plaintiffs. Absent such an allegation, Plaintiffs have failed to allege how Edward Jones's conduct damaged them. They therefore fail to state actionable FLSA and state wage law claims based on their unfulfilled duty to repay their training

---

[5] Plaintiffs do not cite any state statute or regulation requiring employers to make wage payments "free and clear" or otherwise prohibiting "kick-backs" of wages. The statutes Plaintiffs cite in Counts III (Illinois) and VI (Missouri) simply establish the minimum wage and do not otherwise address employers' rights to make deductions by agreement or otherwise. The IWPCA (Count II) "does not grant any independent right to payment of wages and benefits; instead it only enforces the terms of an existing contract or agreement." *Hughes*, 2016 WL 4179153, at *4 (citation omitted); *see Enger v. Chicago Carriage Cab*, 812 F.3d 565, 568 (7th Cir. 2016) (IWPCA claim requires plaintiffs to demonstrate they are "owed compensation [from defendants] pursuant to an employment [agreement]").

costs to Edward Jones.[6] *Vega v. Mid Am. Taping & Reeling, Inc.*, 2018 WL 2933676, at *1 (N.D. Ill. June 12, 2018) (dismissing FLSA claim where plaintiffs did "not articulate[] a cognizable injury in fact with respect to" that claim); *see In re Barnes & Noble Pin Pad Litig.*, 2016 WL 5720370, at *5 (N.D. Ill. Oct. 3, 2016) (dismissing state law claim as plaintiff "fail[ed] to plead any economic or out-of-pocket damages that were caused" by action alleged).

**3.      Plaintiffs fail to adequately plead a claim for unpaid overtime wages.**

In cases involving allegations of unpaid overtime wages, a plaintiff must sufficiently allege the number of hours worked in a given workweek as well as the number of hours of uncompensated time. *Garcia v. M.T. Food Serv., Inc.*, 2014 WL 6461937, at *2 (N.D. Ill. Nov. 17, 2014) (Dow, J.). Indeed, as this Court previously found, dismissal of a plaintiff's FLSA and state law wage and hour claims is warranted in cases where "[a]side from alleging that Defendants failed to pay [the plaintiff] and other similarly situated employees overtime, [the plaintiff] alleges no facts – not the terms of the employment agreement, the period of employment, the number of hours worked overtime, or any facts relating to Defendants' alleged pattern or practice of non-payment." *Id.* "In the absence of almost any factual allegations, the complaint is left with little more than boilerplate, failing to give fair notice of what the claim is and the grounds upon which it rests." *Id.*; *see Trujillo v. Mediterranean Kitchens, Inc.*, 2017 WL 2958240, at *1 (N.D. Ill. July 11, 2017) ("The courts of this district have generally agreed that a plaintiff must plead details beyond having worked more than 40 hours without overtime to state a claim under the FLSA."); *Hughes*, 2016 WL 4179153, at *3 (plaintiffs failed to state a claim for overtime wage violations under the FLSA or the IMWL).

---

[6]      The FLSA states "[a]ny employer who violates the provisions of section 206 [requiring payment of minimum wages] … shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation." 29 U.S.C. § 216(b). Plaintiffs do not allege they have any unpaid minimum wages or unpaid overtime compensation as the result of Edward Jones's challenged repayment policy. Even if they somehow prevailed on this claim, they would not be entitled to any damages based on the language of this section.

In this case, Plaintiffs allege, in conclusory form and without any specific supporting facts, that "[u]nder its policy and practice, Edward Jones knowingly discourages non-exempt FA Trainees from accurately reporting all of the hours they work and fails to pay non-exempt FA Trainees wages and overtime for the work they perform." Compl. ¶ 22. No Plaintiff alleges he or she was individually discouraged from reporting overtime, nor, for even one work week, does any Plaintiff allege any details regarding the number of hours worked or the hours for which he or she was not compensated.

Rather, Plaintiffs refer to a "compensation plan" that they did not attach to the Complaint and generally suggest that "the Firm's compensation schedule is designed to avoid having to pay FA Trainees any overtime premium." *Id.* ¶ 20. Without elaboration – and, importantly, without any specific allegation that Plaintiffs' wages ever fell below the minimum required by law – Plaintiffs apparently imply that because their hourly rate[7] varies depending on the phase of the training period they are in, or because their compensation plans each include "projected" weekly compensation,[8] there must have been a violation of the FLSA or its state analogues. *Id.* ¶ 21. Plaintiffs' claims may not survive a motion to dismiss based on such amorphous inferences.

Plaintiffs' allegations consist of little more than boilerplate and fail to give fair notice to Edward Jones of what their claim is and the grounds upon which it rests. Plaintiffs fail to provide details regarding when and how any alleged off-the-clock hours were worked, or any facts to support the hollow contention that Edward Jones maintained a policy or practice of discouraging the accurate reporting of hours worked. These claims should therefore be dismissed. *See Wilson v. Pioneer Concepts, Inc.*, 2011 WL 3950892, *3 (N.D. Ill. Sept. 1, 2011) (dismissing FLSA claim where

[7] Again, Plaintiffs do not (and cannot) allege that these base wages ever fell below the minimum required by law.
[8] The plan clearly states, "compensation may vary based on the number of hours worked by the trainee." *See, e.g.*, Exh. 2, Reyes Compensation Agreement.

10

"[u]ltimately, [plaintiff] merely alleges that she was an employee … that unidentified employees worked an unidentified number of extra hours … and that some of those employees may have worked overtime without proper pay."); *cf. Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663, 667 (7th Cir. 2007) (at some point the factual detail in a complaint may be so "sketchy" the complaint does not provide sufficient notice).

**B.      Counts I-III and VI Fail Because Plaintiffs' Agreement to Repay Training Costs is Not a Kick-Back Under the FLSA or the Illinois or Missouri Wage Statutes.**

Because Plaintiffs (again) fail to adequately plead any claims relating to the training cost recoupment provisions, such claims should be dismissed as a threshold matter.  However, even if the Court were to consider Plaintiffs' training cost claims, such claims should be dismissed because numerous courts in both the Seventh Circuit and elsewhere have held that a contractual obligation to repay training costs is not, as Plaintiffs allege, a "kick-back" designed to recover wages already paid to Plaintiffs under the FLSA or the state wage and hour statutes at issue.

The FLSA's requirement that wages be paid "free and clear" is explained in 29 C.F.R. §531.35, which provides in relevant part:

> '[W]ages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or free and clear. The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.

Cases interpreting this section make clear that an agreement by an employee to repay training costs to an employer if the employee leaves is not an unlawful "kick-back."  Rather, the message from courts has been employers can create incentives to encourage employees to remain.  This is particularly true where, as here, Edward Jones makes a significant investment in training and developing the employees it seeks to retain, and Plaintiffs acknowledge in their employment agreements that the sum of training costs they agree to repay "bear[] a reasonable relationship to the

11

computed damages Edward Jones would suffer from a breach by you and that Edward Jones will suffer demonstrable loss as a result of your breach." *See* Exh. 1 ¶ 21.

The Seventh Circuit has upheld the enforceability of a like agreement to repay employee training costs. *Heder v. City of Two Rivers*, 295 F.3d 777 (7th Cir. 2002). In *Heder*, the plaintiff, a firefighter, signed an agreement to repay the cost of required paramedic training if he left the City's employ within three years. *Id*. at 778. The court noted that employers regularly create incentives to encourage employees to stay, including deferred compensation and retention bonuses and "no one believes that [such] powerful financial incentive[s] to stick with one's employer until retirement [are] unlawful." *Id*. at 781. The court added: "mak[ing] changing jobs costly … is not enough to throw a contract out the window. Employers offer their workers many incentives to stay, so that they can reap the benefit of training and other productivity enhancers that depend on the employees' tenure with the Firm." *Id*. at 780-81. The court also noted because an "employer may require employees to pay up front," it may also "bear the expense but require reimbursement if an early departure deprives the employer of the benefit of its bargain." *Id.*

In reaching its conclusion that a similar training cost repayment obligation was not a "kick-back," the Ninth Circuit was persuaded by the reasoning in *Heder*. In *Gordon v. City of Oakland*, 627 F.3d 1092 (9th Cir. 2010), the plaintiff, a police officer, signed an agreement when hired which required her to repay a *pro rata* portion of her training costs if she resigned within five years of hire. *Id*. at 1093. Gordon resigned within two years, and the City asked Gordon to repay her training costs. Gordon repaid the balance of her training costs to the City, after which she maintained that payment of her outstanding training cost debt caused the City to violate the FLSA because it reduced her wages below minimum wage. *Id*. As characterized by the Ninth Circuit, the issue was whether Gordon's agreement to repay training costs "caused her to receive less than the federal minimum

12

wage during her final workweek." *Id.* at 1095.

The court recognized that "[b]ecause Gordon did not allege she was paid below the federal minimum wage for any given week, the only way Gordon has stated a cognizable claim is if her payment to the City for a portion of her training costs is a 'kick-back' payment" under 29 C.F.R. § 531.35. *Id.* The court then concluded that Gordon's repayment was not an illegal kick-back because the cost of the training the City provided was instead a "voluntarily accepted loan" of the upfront costs of her training: "[i]nstead of requiring applicants to independently obtain their police training prior to beginning employment, which the City could do only by hiring individuals with [the required certification], the City elected to essentially loan police officer trainees like Gordon the cost of their police academy training…. The City was therefore free to seek repayment of Gordon's training debt as an ordinary creditor." *Id.* at 1096.

Plaintiffs in this case characterize their repayment obligation as a "debt," *see* Compl. ¶¶ 3, 31, and thereby bring their claims squarely within the holding of both *Heder*, which stated that the cost of training equates to a loan (*Heder*, 295 F.3d at 782), and *Gordon*, which found such an obligation to be a "voluntarily accepted loan" (*Gordon*, 627 F.3d at 1096). Repayment of a debt owed by Plaintiffs is not a kick-back, nor does it operate to reduce their wages.

Other courts have reached these same conclusions. In *City of Oakland v. Hassey*, 78 Cal. Rptr. 3d 621, 631 (Cal. Ct. App. 2008), the plaintiff similarly argued that the agreement he entered into with the City to repay training costs prevented him from receiving minimum wage and overtime payments "free and clear" as required by 29 C.F.R. § 531.35. The court disagreed and, citing *Heder*, found that requiring Hassey to repay the costs of his training to the City did not violate the FLSA: "Oakland was permitted to seek reimbursement from police officers who gained the benefit of its training program at the Oakland Police Academy but did not stay with the police department long

13

enough for Oakland to benefit from that training." *Id*.

Likewise, in *Park v. FDM Group*, 2017 WL 946298 (S.D.N.Y. Mar. 9, 2017), and consistent with the holdings in *Heder*, *Gordon*, and *Hassey*, the court rejected a plaintiff's challenge to an agreement to repay training costs similar to the one signed by Plaintiffs. Park's employment agreement required her to repay her employer up to $30,000 in training costs as a "Termination Fee" if she left employment within two years. *Id*. at *2. In the agreement, Park acknowledged "that the Company incurred significant costs in training [her] and that the two-year term was contracted in consideration of such costs," *id*. at *4, and the "Termination Fee" constituted "liquidated damages approximating the damages FDM suffered by reason of breach of the Employment Agreement prior to the completion of the two-year contracted period." *Id*.

The court rejected Park's claim that the Termination Fee constituted an unlawful kick-back, the payment of which would cause her net earnings to fall below the applicable minimum wage.[9] *Id.* Citing the *Gordon* and *Heder* decisions, the court instead concluded that the Termination Fee was a lawful liquidated damages provision, "explicitly tied to repayment of the costs of a training program [that has] been upheld as akin to loan repayment provisions." *Id*.

Plaintiffs, like Park, agreed in writing that the sum of training costs that they are required to repay were reasonable and that such sum would fairly compensate Edward Jones for the damages occasioned by them leaving the Firm before completing three years of employment. The court in *Park* also distinguished the Termination Fee from situations where employers had taken unlawful deductions from employee wages to recover the cost of uniforms, vehicles, and other business expenses because the Termination Fee was neither a "deduction for tools used or costs incurred in the course of Plaintiff's performance of her job." *Id*. Similarly, and also fatal to their claim,

---

[9]    The court noted that Park, like Plaintiffs in the present case, had not alleged that her former employer had made any actual deductions from her paychecks to recover the cost of training. *Park*, 2017 WL 946298, at *4.

Plaintiffs do not allege their repayment obligations are a deduction by Edward Jones for business expenses associated with the performance of Plaintiffs' jobs.

To the extent that Plaintiffs rely on *Ketner v. Branch Banking & Tr. Co.*, 143 F. Supp. 3d 370 (M.D.N.C. 2015) to oppose this motion, such reliance is misplaced. *Ketner* – which permitted plaintiffs' claims to escape dismissal – is easily distinguished.

The defendant's "Leadership Development Program" in *Ketner* was fundamentally different from the marketability-enhancing training provided to the plaintiffs in cases like *Gordon* and *Heder*, and, in this case, the training Edward Jones provided as described in Plaintiffs' Complaint. *Id.* at 375. The *Ketner* decision therefore took pains to point out the facts which rendered the training program in that case to be distinct: "unlike in *Heder* and *Gordon*, where the plaintiffs received a certification recognized beyond their former employers, Ketner challenges [defendant's] training program as not conferring to him **any benefit that is recognized within the broader marketplace** or to him as an associate." *Id.* at 383-84 (emphasis added).

Unlike the employer-specific training in *Ketner*, Plaintiffs in this case admit that the training provided by Edward Jones is designed to help them obtain their Series 7 and Series 66 registrations, Compl. ¶ 18, which are required before one can become a registered broker. Once earned, these registrations can readily transfer from Edward Jones to another broker-dealer and therefore have considerable value in the "broader marketplace." *Ketner*, 143 F. Supp. 3d at 384.

Indeed, the *Ketner* court recognized both the Seventh and Ninth Circuits approved cost recoupment provisions where the employer-paid training also rendered the employee more marketable beyond the employer who provided the training. Where, as here, such training provides transferrable registrations and skills, *Heder* and *Gordon* are directly applicable. Both of those decisions addressed training that provided a "portable credential," one that is "as valuable as the day

15

[the employee] received [the] certification" (*Heder*, 295 F.3d at 778, 782) that could be "independently utilize[d]" (*Gordon*, 627 F.3d at 1096 n.5) if the employee changed jobs.

The clear weight of authority allows employers to require employees to repay training costs even if the purpose is to encourage employees to remain with the employer for a period of time. Particularly after the employer provides extensive (and expensive) training that inures to the employee's benefit, including by making them attractive to other prospective employers, it is neither inappropriate nor illegal for employers to create incentives to encourage an employee to remain. Plaintiffs' minimum wage and overtime claims relating to the training reimbursement provisions of their employment agreements – Counts I-III and VI – should be dismissed.

## C.  Plaintiffs' Misclassification Claim Asserted in Count I Is Insufficiently Pled.

Plaintiffs assert (in a newly added claim) that they were misclassified as exempt employees under the FLSA. Adequately pleading a misclassification claim requires supporting it with specific factual substance. Generally alleging legal conclusions regarding the elements of a misclassification claim, such as the plaintiff "did not perform work related to [the defendant's] general business operations," or "did not exercise discretion and/or independent judgment to be exempt in an administrative capacity" are insufficient to withstand a motion to dismiss. *Schneider v. Space Sys./Loral*, 2011 WL 4344232, at *3 n.5 (N.D. Cal. Sept. 15, 2011). Moreover, a plaintiff must plausibly allege that he or she actually worked overtime, and the failure to make such an allegation is fatal to a misclassification claim. *Clark v. EmCare, Inc.*, 2017 WL 1073342, at *2 (C.D. Cal. Mar. 21, 2017) ("[W]ithout facts supporting a reasonable inference that Plaintiff actually worked overtime Plaintiff's classification scheme is irrelevant." (citation omitted)).

In this case, for the reasons stated above, Plaintiffs fail to adequately state any overtime claim. Therefore, they may not maintain a misclassification claim, and any such claim may be

dismissed on this basis alone. *Id.*

Plaintiffs also fail to adequately plead facts to show that the elements of the administrative exemption are not met.[10] First, Plaintiffs' conclusory statement that "Edward Jones did not pay them a guaranteed, predetermined salary," *see* Compl. ¶ 84, is unsupported by factual allegations. Plaintiffs allege that they were paid "on the condition that Plaintiffs … pay training costs" and that their wages were otherwise "subject to reduction." *Id.* For the reasons stated above, the premise that there is any wage and hour significance associated with a contractual repayment provision is fundamentally flawed.[11] And, nowhere do Plaintiffs allege that their salary was ever subject to being reduced **below the minimum required to qualify for the administrative exemption.**[12] Indeed, Plaintiff Bland alleges the opposite – that he had a "$45,000 initial annual salary," nearly **twice** that required to qualify for the administrative exemption. *Id.* ¶ 41. Simply stated, Plaintiffs do not (and cannot) allege that any of their salaries, in fact, fell below the standard required by the applicable regulation.

Plaintiffs' allegations regarding the other elements of their misclassification claim are even more conclusory. Plaintiffs only generally assert that "[t]he primary duty of Plaintiffs … did not

---

[10]    To qualify as exempt under the administrative exemption, an employee must be one: "(1) Compensated on a salary or fee basis at a rate of not less than $455 per week…; (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200. The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).

[11]    Plaintiffs also may attempt to rely on *Ketner*, 143 F. Supp. 3d 370, to support their misclassification claims. *Ketner* is distinguishable because unlike the reimbursement policy at issue in *Ketner*, the training cost provision at issue in this case does not apply immediately upon separation of employment, but rather only if certain other conditions are met, namely continued FINRA licensure and employment with a competitor.  Moreover, *Ketner*'s decision in this regard is contrary to prevailing law in this circuit holding that the cost of training equates to a loan, not an unlawful kick-back that has any wage and hour consequence. *Heder*, 295 F.3d 782.  And, respectfully, *Ketner* wrongly interpreted the DOL opinions upon which it relied. Contrary to what Plaintiffs' allegations imply, it is simply not the law that every attempt by an employer to seek money from a former employee (whether based on contract, a debt owed by the employee, or otherwise) may be turned into a possible violation of the FLSA or a state law analog.

[12]    The compensation plan Plaintiffs allege but do not attach to the Complaint states, "you are paid a Minimum Guaranteed Salary ("MGS") each month," and "[t]he MGS will not be reduced based on the quality or quantity of work you perform."  Exh. 2.

include the exercise of discretion and independent judgment with respect to matter of significance" and that "Edward Jones did not place Plaintiffs … in job positions whose primary duty was to perform work directly related to the management or general business operations of Edward Jones or its clients." *Id.* ¶¶ 85-86. These are the precise allegations other courts have found to be insufficient. *Schneider*, 2011 WL 4344232, at *3 n.5. For this reason, Plaintiffs' misclassification claim is insufficiently pled and should be dismissed.

Additionally, what little Plaintiffs do allege regarding client-development, account-servicing and selling as licensed FAs establishes that Plaintiffs are properly classified as exempt after they attain their can-sell date. The DOL's governing regulations provide that financial services employees, such as FAs, generally meet the "duties requirements for the administrative exemption," and list several tasks deemed to be exempt, including "work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products." 29 C.F.R. § 541.203(b); *see also* Dep't of Labor, Wage & Hour Div., Op. Ltr. Fair Labor Standards Act ("Op. Ltr."), No. FLSA2006-43, 2006 WL 3832994 (Nov. 27, 2006) (concluding that registered representatives – which can include titles such as broker-representatives, financial executives, financial consultants, financial advisors, investment professionals, and stockbrokers – "satisfy the requirements of the administrative exemption").

Federal courts agree. *See In re Morgan Stanley Smith Barney LLC Wage & Hour Lit.*, 2017 WL 772904, at *8 (D.N.J. Feb. 28, 2017) (financial advisors fell under administrative exemption); *Tsyn v. Wells Fargo Advisors, LLC*, 2016 WL 612926, at *17-18 (N.D. Cal. Feb. 16, 2016) (same);

18

*Hein v. PNC Fin. Servs. Grp., Inc.*, 511 F. Supp. 2d 563 (E.D. Penn. 2007) (same); *cf. Bachrach v. Chase Inv. Servs. Corp.*, 2007 WL 3244186, at *3 (D.N.J. Nov. 1, 2007) ("With respect to the overtime claims, the law strongly suggests that [FAs] were not entitled to overtime."). Even FAs engaged in "sales" are exempt, so long as their "sales activities are a function of their professional judgment respecting their clients' best interests." *Hein*, 511 F. Supp. 2d at 570-71. And, courts have specifically found that "cold-calling" potential clients includes – at the very least – a substantial amount of FLSA exempt work, because such work is used "to elicit information about assets and investment goals" which is "considered administrative work under DOL regulations." *In re Morgan Stanley*, 2017 WL 772904, at *6; *see Hein*, 511 F. Supp. 2d at 573 (cold-calling potential customers exempt activity because "information gathering is an administrative activity under DOL regulations").

Plaintiffs' allegations establish they were properly characterized as exempt employees upon achieving can-sell status. Plaintiffs allege that they each earned their FINRA Series 7 and 66 licenses during their training. The FINRA "Suitability Rule" requires licensed FAs to "conduct diligence into each individual client's financial situation in order to recommend only those securities that are suitable for the client's particular financial status, objectives, risk tolerance, tax exposure, and the like." Op. Ltr., 2006 WL 3832994; *see also* FINRA Rule 2111(a) (requiring FAs to "have a reasonable basis to believe that a recommended transaction or investment strategy involving a security or securities is suitable for the customer, based on the information obtained through the reasonable diligence of the member or associated person to ascertain the customer's investment profile"). Licensed FAs are also required to abide by the FINRA "Know Your Customer" Rule, which mandates registered representatives to "use reasonable diligence, in regard to the opening and maintenance of every account, to know (and retain) the essential facts concerning every customer

19

and concerning the authority of each person acting on behalf of such customer." *See* FINRA Rule 2090. The FINRA Rules require licensed FAs – which Plaintiffs allege themselves to have been at all times relevant to this misclassification claim – to engage in precisely the type of tasks defined by the DOL as exempt administrative work.

Plaintiffs allege they spent time soliciting "door knock" contacts, i.e., cold-calling potential customers for the purposes of gathering "contact and other information." *Id.* ¶ 23. As stated above, such work has resoundingly been characterized as an exempt activity. *In re Morgan Stanley*, 2017 WL 772904, at *6; *Hein*, 511 F. Supp. 2d at 573-74. Moreover, Plaintiffs readily admit that as FAs they each "developed" clients and "buil[t] [a] book of business for Edward Jones." Compl. ¶¶ 37, 44, 49, 53, 58, 62, 67; *see also id.* ¶ 118 (Plaintiffs "developed and serviced client accounts and assets"). Although conclusory, Plaintiffs allege their "primary duty [was] to sell financial products." *Id.* ¶¶ 23, 85. Because they were licensed FAs at the time they were doing so, implicit in such allegations is the fact they engaged in the exempt work of obtaining customer information through reasonable diligence and, using professional judgment with respect to the clients' best interests, recommending a strategy suitable for each client.[13] *Hein*, 511 F. Supp. 2d at 570-71.

In sum, Plaintiffs' misclassification claim is insufficiently pled and Plaintiffs' own allegations regarding the work they performed establish they were properly classified as exempt from the FLSA overtime requirements. Plaintiffs' misclassification claim should be dismissed.

**D.    Plaintiffs' Claims in Count VI Are Insufficiently Pled and Are Also Time Barred.**

In Count VI, Plaintiffs – who worked for Edward Jones in Illinois, North Carolina, and South

---

[13]    Plaintiffs allege that "Edward Jones instructed Plaintiffs … to sell these financial products without regard to the clients' individual need, financial circumstances, or investment objectives." Compl. ¶ 85. Edward Jones denies this allegation and contends that Federal Rule of Civil Procedure 11(c)(3) is an appropriate tool for the Court to consider in response to such a baseless claim. Importantly, nowhere do Plaintiffs ever allege that they violated their own professional obligations under the FINRA Rules by, in fact, following such alleged instruction.

Carolina – allege that Edward Jones violated the Missouri Minimum Wage Law by failing to pay minimum and overtime wages by: (1) requiring Plaintiffs to sign employment agreements that required them to reimburse training costs (which "has the effect of reducing the income earned by Plaintiffs … to fall below the minimum wage and overtime rate required" by Missouri law), Compl. ¶¶ 123, 127, and (2) failing to "compensate Plaintiffs … beyond their normal rate of pay on weeks they worked over 45-60 hours," *id.* ¶ 129.

At the outset, Plaintiffs fail to plead sufficient contacts with Missouri to cause their employment to be governed by the MMWL. Plaintiffs Durkiewicz, Bowles, and Reyes all claim to have worked in Illinois (and demand in Count III that the IMWL's rate of $8.25 per hour applies – $0.40 per hour higher than the MMWL). Plaintiffs' allegations that their employment agreements contain a Missouri choice-of-law provision, and that they attended some training in Missouri, fall well short of the contacts necessary to permit them to bring claims under this statute. *Wickenhauser v. Edward D. Jones & Co.*, 953 F. Supp. 286, 289-90 (E.D. Mo. 1996) (dismissing Missouri law claim for insufficient Missouri contacts where plaintiff alleged her employment contract contained a Missouri choice-of-law clause and she occasionally attended "training seminars and meetings" conducted in St. Louis). Moreover, Plaintiffs fail to allege Edward Jones failed to pay them minimum wage or overtime for any work performed in Missouri.

Even if Plaintiffs did allege sufficient contacts with Missouri, each Plaintiff's claim under the MMWL is time-barred by the MMWL's two-year statute of limitations. *See* Mo. Rev. Stat. § 290.527 (requiring commencement of actions "within two years of the accrual of the cause of action"). Each Plaintiff alleges that he or she achieved their can-sell date before March 18, 2016. Compl. ¶¶ 10 (Bland classified exempt in March 2015), 11 (Durkiewicz in November 2015); 12 (Bowles in June 2014), 13 (Reyes in February 2016); *see id.* ¶ 23 (Edward Jones classifies

21

employees as exempt after reaching can-sell date).[14]  For the reasons stated in Section C *supra*, Plaintiffs therefore allege they became an exempt employee outside of the statute of limitations period – *i.e.*, before March 18, 2016.  Each Plaintiff's MMWL claim should be dismissed.

**E.      Plaintiff Bowles's Claims under Count I and Count III are Also Time-Barred.**

Plaintiff Bowles's wage claims under Counts I and III are time-barred because his claims arise outside of the possible statute of limitations.  FLSA claims face a maximum three-year statute of limitations (29 U.S.C. § 255(a)), as do claims under the IMWL (820 ILCS 105/12(a)).

Plaintiff Bowles alleges he worked for Edward Jones until January 2015.  Compl. ¶ 12.  By his own admission, Bowles ceased being an Edward Jones's employee covered by the FLSA or IMWL more than three years before Plaintiffs filed their Complaint on March 13, 2018.  Bowles's allegations therefore arose well outside the statutory limitations period under both the FLSA and the IMWL, and his claims in Counts I and III are barred and should be dismissed.[15]

**F.      Plaintiffs Fail to State a Cognizable Claim for Rescission in Count IV.**

In Count IV, Plaintiffs allege their agreements provide that they "would have to pay up to $75,000 in 'training costs' if their employment with Edward Jones was terminated for any reason and they engaged in the sale of securities and/or insurance business within three years after receipt of 'can sell' status." *Id.* ¶ 111.  Plaintiffs further allege this provision constitutes an unlawful clawback of wages, an unenforceable penalty, and an unenforceable restrictive covenant.  *Id.* ¶¶ 112-14.  Such allegations fail to state a claim for rescission as a matter of law.  Although not specifically stated,

---

[14]    As set forth in Section E *infra*, Bowles alleges his employment with Edward Jones ended over three years before Plaintiffs filed the Complaint, and his MMWL claim would be barred for this additional reason.

[15]    *See* 29 C.F.R. § 790.21(b) ("[t]he courts have held that a cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends.").

Count IV is ostensibly premised upon Illinois law.[16]

Under Illinois law, "[a] claim for rescission is sufficient if it alleges: (1) substantial nonperformance or breach by the defendant; and (2) that the parties can be restored to the status quo ante." *Pardo v. Mecum Auction Inc.*, 77 F. Supp. 3d 703, 711 (N.D. Ill. 2014); *cf. Patel v. Pate*, 128 S.W.3d 873, 878 (Mo. App. W.D. 2004); *Brannock v. Fletcher*, 155 S.E.2d 532, 542 (N.C. 1967); *Ebner v. Haverty Furniture Co.*, 122 S.E. 578 (S.C. 1924).

Regardless of what state's law is applied, Plaintiffs' rescission claim fails. Plaintiffs do not argue that Edward Jones has agreed to rescind the disputed contracts, or that there has been substantial nonperformance of the contracts on the part of Edward Jones. Indeed, Plaintiffs allege the opposite – that they received the training, and that Edward Jones now seeks to enforce Plaintiffs' contractual obligations. And, as Plaintiffs have already received the training, the parties cannot be restored to the status quo ante unless, at the very least, Plaintiffs reimburse Edward Jones a sum that corresponds to the agreed-upon value of the training that was provided to them. Rescission is not available to Plaintiffs under the facts that they have alleged in their Complaint, and the claim should be dismissed.

## G. Plaintiffs Fail to State an Actionable Unjust Enrichment Claim in Count V.

In Count V, Plaintiffs allege that Edward Jones was unjustly enriched based on its retention of client accounts and assets they developed and serviced during their employment. Plaintiffs allege that "Edward Jones retained the client account procured" by Plaintiffs, "which continued to generate fees and revenues for Edward Jones," but that "Edward Jones did not compensate" Plaintiffs "for the

---

[16]   Plaintiffs' claim for "rescission" is asserted on behalf of Plaintiffs and "other similarly situated **Illinois** FA Trainees." Compl. ¶ 110 (emphasis added). Edward Jones notes that Plaintiffs acknowledge their agreements with Edward Jones contain a Missouri choice-of-law provision, "are to be deemed to be a Missouri contract," and are "governed by the laws of Missouri." Compl. ¶ 124; *see* Exh. 1, ¶ 22. Therefore, Plaintiffs' allegations suggest this claim should be governed by Missouri law. Regardless, Plaintiffs' rescission claim would fail under the law of Illinois, South Carolina, North Carolina, or Missouri.

benefits the Firm retained" but instead sought to recover training costs.[17] Compl. ¶¶ 118-19. Such allegations fail to state an unjust enrichment claim as a matter of law. Although not specifically stated, Count V is also ostensibly premised upon Illinois law.[18]

First, this claim is not actionable under Illinois (or any) law, because an unjust enrichment claim "is unavailable where, as here, the parties have entered into a contract which governs the dispute." *See Hickman v. Wells Fargo Bank, N.A.*, 683 F. Supp. 2d 779, 797 (N.D. Ill. 2010) (citation omitted). Throughout their Complaint, Plaintiffs plainly allege the existence of a contract with a training cost recoupment provision. *See*, *e.g.*, Compl. ¶ 1. Plaintiffs may not simultaneously claim Edward Jones was unjustly enriched because it requested that Plaintiffs perform their obligations under that contract to repay training costs. Plaintiffs' claims arising from Edward Jones's assertion of its rights under these agreements renders Plaintiffs' unjust enrichment claims invalid under Illinois law. *See Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005) ("where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application" (citation omitted)); *cf. Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. W.D. 2010); *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988); *Earthscapes Unlimited v. Ulbrich*, 703 S.E.2d 221, 225 (S.C. 2010).

Second, Plaintiffs fail to explain in their Complaint how Edward Jones's retention of its own customers following Plaintiffs' resignations is unjust or results in a detriment to Plaintiffs. Plaintiffs acknowledge in their employment agreements that they hold no ownership interest in these client

---

[17]    To the extent Plaintiffs allege that their unjust enrichment claim is tethered to their wage and hour claims arising from their obligation to repay training costs, such claims must be dismissed. *See*, *e.g.*, *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) ("When an underlying claim … is deficient, a claim for unjust enrichment should also be dismissed.").

[18]    In their initial complaint, Plaintiffs' unjust enrichment claim was brought as an "Illinois Rule 23 Class." ECF 1 at 17. Plaintiffs' amended pleading removes that detail but is still brought on behalf of Plaintiffs and "other similarly situated **Illinois** FA Trainees." Compl. ¶¶ 118, 119 (emphasis added). Regardless, Plaintiffs' unjust enrichment claim would fail under the laws of Illinois, South Carolina, North Carolina, or Missouri.

24

relationships and that these client relationships belonged to Edward Jones at all times. *See, e.g.*, Exh. 1, ¶ 13 (the "identities, names, addresses and telephone numbers of any account and/or client" are confidential, proprietary trade secrets of Edward Jones); *id.* (for one year following separation of employment former financial advisor shall not "solicit .... directly or indirectly, any clients of Edward Jones"); *id.* ¶ 5 (financial advisor's right to earn commissions on client accounts "ends with trades settling during [the advisor's] month of termination"). Plaintiffs do not allege a single fact to support any reasonable expectation of retaining any clients they serviced while employed by Edward Jones, or that they have been affirmatively misled to believe they had any legal entitlement to retain such clients upon leaving Edward Jones. Any such allegations would be contrary to the clear language of their employment agreements in any event.

For similar reasons, Plaintiffs fail to adequately plead unjust retention of a benefit by Edward Jones to Plaintiffs' detriment. *See Sadler v. Retail Props. of Am.*, 2014 WL 2598804 at *19-21 (N.D. Ill. June 10, 2014) (dismissing plaintiffs' unjust enrichment claims because no unjust benefit was conferred upon the defendants); *cf. Hertz v. RAKS Hospitality*, 196 S.W.3d 536, 543 (Mo. App. E.D. 2006); *Se. Shelter Corp. v. BTU, Inc.*, 572 S.E.2d 200, 206-07 (N.C. Ct. App. 2002); *Columbia Wholesale Co. v. Scudder May*, 440 S.E.2d 129, 131-32 (S.C. 1994).

Plaintiffs' Complaint does not state a cognizable unjust enrichment claim under the law of Illinois (or Missouri, South Carolina, or North Carolina), and should be dismissed.

## V.    CONCLUSION

As stated herein, Plaintiffs' Complaint (ECF 35) should be dismissed with prejudice.

Dated: July 10, 2018

Respectfully submitted,

**BRESSLER AMERY ROSS, P.C.**                    **DOWD BENNETT LLP**

By: /s/    Carole Miller                              By:  /s/ Jennifer S. Kingston

    Brian F. Amery (*pro hac vice*)               James F. Bennett (*pro hac vice*)
    Carole Miller (*pro hac vice*)               Jennifer S. Kingston (*pro hac vice*)
    Stuart D. Roberts (*pro hac vice*)            Michelle D. Nasser
    2001 Park Place, Suite 1500                  7733 Forsyth Blvd., Suite 1900
    Birmingham, Alabama 35203                    St. Louis, Missouri 63105
    (205) 719-0400 (telephone)                   (314) 889-7300 (telephone)
    (205) 719-0500 (facsimile)                   (314) 863-2111 (facsimile)
    bamery@bressler.com                          jbennett@dowdbennett.com
    cmiller@bressler.com                         jkingston@dowdbennett.com
    sroberts@bressler.com                        mnasser@dowdbennett.com

    *Attorneys for Defendants*                   *Attorneys for Defendants*

26

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on this 10th day of July, 2018 a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was filed via the Court's ECF system effecting service upon the following Counsel of record:

          Linda Debra Friedman
          Suzanne E. Bish
          George S. Robot
          Stowell & Friedman, Ltd.
          303 W. Madison Street
          Suite 2600
          Chicago, IL 60606
          312-431-0888
          lfriedman@sfltd.com
          sbish@sfltd.com
          grobot@sfltd.com

          /s/ Jennifer S. Kingston

27