**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WAYNE BLAND, et al., | ) | |
| Plaintiffs, | ) | Case No. 18-cv-01832 |
| | ) | |
| v. | ) | Honorable Robert M. Dow, Jr. |
| | ) | |
| EDWARD D. JONES & CO., L.P., et al., | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

STANDARD OF REVIEW ................................................................................................. 3

FACTUAL BACKGROUND .............................................................................................. 3

ARGUMENT ...................................................................................................................... 7

  **I. In Counts I-IV, Plaintiffs Fail to State a Wage-and-Hour Claim Based
    on the TCRP.** ................................................................................................. 8

    **A.** **Plaintiffs fail to establish standing to assert their claims based on the TCRP.** .... 8

    **B.** **Plaintiffs fail to state a claim regarding the TCRP because it is not a kickback.** . 9

  **II. In Counts I-IV, Plaintiffs Fail to State Minimum Wage and Unpaid Overtime
    Claims.** ..................................................................................................... 11

    **A.** **Bland's claims are time-barred.** ................................................................. 12

    **B.** **Materials central to Plaintiffs' claims show Bland's allegations are false.** ......... 12

    **C.** **Reyes and Durkiewicz's allegations are also false.** ................................. 16

  **III. In Counts I-IV, Plaintiffs Fail to State a Misclassification Claim.** .......................... 17

  **IV. Plaintiffs' Claims in Count IV are Without Sufficient Contacts and are
    Time-Barred.** ............................................................................................ 20

  **V. Bowles's State Law Wage-and-Hour Claims in Counts II-IV Should Be Dismissed.** . 21

  **VI. The Court Should Not Exercise Subject Matter or Supplemental Jurisdiction Over
    Plaintiffs' Remaining Claims, Counts V-X, and Such Claims are Inadequately
    Pled.** ....................................................................................................... 21

    **A.** **Plaintiffs fail to state a cognizable fraudulent inducement claim in Count V.** ... 22

    **B.** **Plaintiffs fail to state a cognizable breach of contract claim in Count VI.** .......... 23

    **C.** **Plaintiffs fail to state a cognizable rescission claim in Count VII.** ...................... 23

    **D.** **Plaintiffs fail to state a cognizable unjust enrichment claim in Count VIII.** ...... 24

    **E.** **Plaintiffs fail to state a cognizable Illinois consumer fraud claim in Count IX.** . 25

    **F.** **Plaintiffs fail to state a Declaratory Judgment Act claim in Count X.** ................ 25

CONCLUSION .................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

Abcarian v. McDonald,
   617 F.3d 931 (7th Cir. 2010) ................................................................................................. 12

Aeroground v. CenterPoint Props.,
   2010 WL 2169493 (N.D. Ill. May 27, 2010) ......................................................................... 22

Airborne Beepers & Video v. AT&T Mobility,
   499 F.3d 663 (7th Cir. 2007) ................................................................................................. 23

Appleby v. Sprint Nextel,
   2008 WL 2130428 (S.D. Ill. May 20, 2008) ......................................................................... 25

Bachrach v. Chase Inv. Servs.,
   2007 WL 3244186 (D.N.J. Nov. 1, 2007) ............................................................................. 20

Benson v. Fannie May,
   2018 WL 6446391 (N.D. Ill. Dec. 10, 2018) ........................................................................... 1

Enger v. Chicago Carriage Cab,
   812 F.3d 565 (7th Cir. 2016) ............................................................................................. 8, 21

Fridman v. GCS Computers,
   2019 WL 1017534 (S.D.N.Y. Mar. 4, 2019) ...................................................................... 3, 5

Gordon v. City of Oakland,
   627 F.3d 1092 (9th Cir. 2010) ................................................................................................. 9

Heder v. City of Two Rivers,
   295 F.3d 777 (7th Cir. 2002) ............................................................................................. 9, 25

Hein v. PNC Fin. Servs.,
   511 F. Supp. 2d 563 (E.D. Penn. 2007) ................................................................................ 20

Hess v. Kanoski & Assocs.,
   668 F.3d 446 (7th Cir. 2012) ................................................................................................. 25

Heuberger v. Smith,
   2017 WL 3923271 (N.D. Ind. Sept. 7, 2017) .................................................................... 3, 12

Hickman v. Wells Fargo Bank,

    683 F. Supp. 2d 779 (N.D. Ill. 2010) ................................................................ 24

Hughes v. Scarlett's G.P.,

    2016 WL 4179153 (N.D. Ill. Aug. 8, 2016) ..................................................... 7, 8

Hyatt Int'l Corp. v. Coco,

    302 F.3d 707 (7th Cir. 2002) ........................................................................... 9

In re Barnes & Noble Pin Pad Litig.,

    2016 WL 5720370 (N.D. Ill. Oct. 3, 2016) ..................................................... 9

In re Morgan Stanley Smith Barney LLC Wage & Hour Lit.,

    2017 WL 772904 (D.N.J. Feb. 28, 2017) ....................................................... 20

Jackson v. Old EPT,

    2014 WL 12696886 (W.D. Mo. Dec. 8, 2014) ............................................... 7

Kavanagh v. KLM Royal Dutch Airlines,

    566 F. Supp. 242 (N.D. Ill. 1983) .................................................................. 7

Ketner v. Branch Banking & Trust Co.,

    143 F. Supp. 3d 370 (M.D.N.C. 2015) ........................................................... 9

Martis v. Grinnell Mut. Reins.,

    905 N.E.2d 920 (Ill. App. Ct. 2009) .............................................................. 24

McCabe v. Crawford & Co.,

    210 F.R.D. 631 (N.D. Ill. 2002) ..................................................................... 3

Pardo v. Mecum Auction,

    77 F. Supp. 3d 703 (N.D. Ill. 2014) ............................................................... 23

Park v. FDM Grp.,

    2018 WL 4100524 (S.D.N.Y. Mar. 9, 2017) ................................................. 9

Sadler v. Retail Props.,

    2014 WL 2598804 (N.D. Ill. June 10, 2014) ................................................. 25

Smith v. Kriska,

    113 S.W.3d 293 (Mo. App. 2003) .................................................................. 25

Tsyn v. Wells Fargo,

    2016 WL 612926 (N.D. Cal. Feb. 16, 2016) .................................................. 20

Vega v. Mid Am. Taping & Reeling,
    2018 WL 2933676 (N.D. Ill. June 12, 2018) ........................................................................ 9

Weston v. Ill. Dep't of Human Servs.,
    433 F. App'x 480 (7th Cir. 2011) ...................................................... 12, 13, 14, 16

White v. Addante,
    498 F. Supp. 2d 1109 (N.D. Ill. 2007) ............................................................ 21, 22

Wickenhauser v. Edward D. Jones & Co.,
    953 F. Supp. 286 (E.D. Mo. 1996) ........................................................................ 21

Wright v. Assoc. Ins.,
    29 F.3d 1244 (7th Cir. 1994) ................................................................................... 3

Statutes

29 U.S.C. § 216(b) ............................................................................................................ 9
29 U.S.C. § 255(a) .......................................................................................................... 12
815 ILCS 505/1(e) .......................................................................................................... 25
820 ILCS 105/12(a) .................................................................................................. 12, 21
Mo. Rev. Stat. § 290.527 .......................................................................................... 20, 21

Regulations

29 C.F.R. § 531.35 .......................................................................................................... 10
29 C.F.R. § 541.200 ........................................................................................................ 19
29 C.F.R. § 541.203(b) ................................................................................................... 20

Other Authorities

Dep't of Labor, Op. Ltr. FLSA, No. FLSA2006-43,
    2006 WL 3832994 (Nov. 27, 2006) ....................................................................... 20

FINRA Rule 2111 ............................................................................................................ 18
FINRA Rule 2090 ............................................................................................................ 18

Defendants Edward D. Jones & Co., L.P. ("EDJ" or the "Firm") and The Jones Financial Companies, L.L.L.P. ("Defendants") move, pursuant to Rule 12(b)(1) and (6), to dismiss the Second Amended Complaint ("Complaint"), ECF 79. Plaintiffs amended their pleading after Defendants filed an initial motion to dismiss, and again amended their pleading after the Court dismissed their claims. Further amendment should not be allowed and the Complaint should be dismissed with prejudice. Benson v. Fannie May, 2018 WL 6446391, at *4 (N.D. Ill. Dec. 10, 2018) (after two opportunities to plead plaintiffs' best case, "further amendment would be futile").

## INTRODUCTION

On March 19, 2019, the Court dismissed the various species of Plaintiffs' FLSA claims. ECF 68. After outlining fatal standing defects, without qualification the Court found EDJ's training cost reimbursement provision ("TCRP") upon which Plaintiffs' action rested "has no effect vis-à-vis the FLSA's wage and hours requirements. ***It is not a kickback of Plaintiffs' salaries***, but a contractual debt owed by Plaintiffs." Id. at 25-26 (emphasis added). The Court also found Plaintiffs' "off-the-clock" allegations failed to state either a minimum wage or unpaid overtime claim, and instructed Plaintiffs to provide "facts to support a plausible claim that their effective hourly wages fell below the statutory minimum wage for at least one period" to state a minimum wage claim, and "at least one example of a pay period in which their pay was insufficient given the number of hours they worked" to state an overtime claim. Id. at 19, 23. And, the Court found Plaintiffs' misclassification claims failed because their "formulaic and conclusory allegations [were] simply not enough to state a claim for overtime"; they could not "ground their salary basis challenge on the" TRCP or the Firm's financial advisor compensation plan; and, unless they "explicit[ly]" alleged they sold products in a manner that violated their professional obligations under FINRA, they could not base their job-duties challenge on an allegation they sold

financial products without exercising discretion "because such sales inherently involve their professional judgment" under FINRA. Id. at 25-30. The Court dismissed Plaintiffs' state law claims without prejudice, and cautioned Plaintiffs to "seriously consider the possible effects of this Court's decision … regarding the TCR Provision on certain of their state claims." Id. at 32 n.20.

Plaintiffs responded to the Court's Order with a 66-page, 247-paragraph, ten-count Complaint. After stripping away Plaintiffs' hyperbole, all of the additional allegations fall into one of two categories – more of the same, or demonstrably false – and none states an actionable claim against EDJ. To start, flaunting the Court's explicit findings, Plaintiffs double down on their claim the TCRP (contained in the employment contract each of them signed) somehow violates the FLSA. Plaintiffs do not address the standing issues identified by the Court, and restate this claim by maintaining the same stale allegations the Court has already rejected, namely, those challenging the value of the training provided. Dispositive of this issue, the Court has already ruled such a contention is not a reason "to find that the TCR Provision violates the FLSA." Id. at 17.

Plaintiffs again assert a minimum wage claim, but, again ignoring the Court's instructions, fail to provide any facts regarding their effective hourly wages. Plaintiffs also assert a claim for unpaid overtime; however, as shown in the time entries Plaintiffs themselves submitted, as well as their own pay records (both of which are available for the Court to consider on a motion to dismiss), Plaintiffs' allegations are false. For example, Bland alleges he worked 64 hours but was paid for only 52 hours the week of January 11, 2015. In truth, Bland recorded ***74.5 hours*** this week, and was therefore ***paid for over ten hours <u>more</u> than he now alleges he worked***. Plaintiffs' minimum wage and overtime claims disregard the Court's directions for repleading and resort to false allegations in an ill-fated effort to replead.

Plaintiffs also reassert misclassification claims, but offer only allegations consistent with

their previously asserted (and decidedly insufficient) contentions the TCRP is a kickback of their salaries, the compensation plan does not guarantee wages, and they sold products without regard to the clients' individual needs, circumstances, or objectives. Indeed, Plaintiffs go only as far as alleging they received little training and felt unprepared to work as financial advisors, stopping well short of what this Court made clear they need to allege to adequately state a claim: Plaintiffs provide no explicit allegation that acknowledges violating their obligations under FINRA while working for EDJ. Rather, Plaintiffs allege they "felt it safe to sell from the list of products" given to them by EDJ. Plaintiffs' misclassification claims disregard the Court's repleading instructions.

The FLSA (and coextensive state law wage-and-hour) claims should be dismissed with prejudice. The Court should decline to exercise jurisdiction over the remaining claims based on state statutory and common law – which are untethered to any wage-and-hour issue present in the federal claim. If the Court finds it has jurisdiction to consider these claims, such claims should be dismissed with prejudice. Plaintiffs should be admonished for asserting claims that are plainly false and inconsistent with the Court's prior Order and counsel's obligations under Rule 11.

## STANDARD OF REVIEW

EDJ adopts the 12(b)(1) and (6) standard of review stated by the Court. ECF 68 at 6-7, 9.

## FACTUAL BACKGROUND[1]

Plaintiffs allege EDJ's financial advisor ("FA") training program lasts approximately 17

---

[1]   A court may consider materials embraced by the pleadings in ruling on a motion to dismiss. See Wright v. Assoc. Ins., 29 F.3d 1244, 1248 (7th Cir. 1994); McCabe v. Crawford & Co., 210 F.R.D. 631, 639 n.4 (N.D. Ill. 2002) ("we will not allow [plaintiff] to avoid dismissal … by failing to attach [a document] which proves that he has no claim"). This includes contracts alleged to exist in a complaint. Wright, 29 F.3d at 1248. This also includes pay records that are central to a plaintiff's claims and referenced in a complaint. Heuberger v. Smith, 2017 WL 3923271, at *9 (N.D. Ind. Sept. 7, 2017) (considering paychecks referenced in the complaint and central to the plaintiff's claim on motion to dismiss); see ECF 79 ¶ 35 ("FA Trainees are paid on a bi-weekly basis"). And, this includes time records that are at issue. Fridman v. GCS Computers, 2019 WL 1017534, at *4 (S.D.N.Y. Mar. 4, 2019) ("this Court may consider … timesheets, when deciding a motion to dismiss, especially where, as here, the time records are referenced in the Amended Complaint"); see ECF 79 ¶ 37 (EDJ has a "timekeeping mechanism").

weeks for unlicensed new hires. ECF 79 ¶ 21. During the first study phase, or "Study for Success," FA trainees study for the Series 7 and 66 licensing exams.[2] Id. ¶ 23. After passing both exams, FA trainees enter the second phase of training, first attending Know Your Customer or "KYC" (on-site training occurring in either St. Louis or Tempe). Id. ¶ 29. During this one-week period, FA trainees learn how to approach prospective customers, as well as strategies to overcome the obstacles one may face working in the retail brokerage business. Id. ¶¶ 30, 69. FA trainees then return home for the "door knocking" or "Field Foundations" portion of the training to practice those strategies and develop a base of prospective clients. Id. ¶ 31. The training program then concludes with another week in St. Louis or Tempe, entitled Evaluation/Graduation ("Eval/Grad"), where FA trainees contact the prospective client base they established during Field Foundations. Id. ¶ 33. If an FA trainee successfully completes Eval/Grad, he or she achieves "can-sell" status, the date on which the individual may operate as a licensed FA for EDJ. Id. ¶ 18.

All of the named Plaintiffs participated in EDJ's training program. Id. ¶¶ 5-8. Before beginning employment with EDJ, Plaintiffs executed employment agreements that obligated each of them to pay "training costs" of up to $75,000 if his or her employment with EDJ ended for any reason within three years of receipt of a "can-sell date" and he or she accepted "employment with any entity … engaged in the sale of securities and/or insurance business." ECF 79 ¶ 18; Exh. 1 ¶ 21. In this regard, Plaintiffs "agree[d] to reimburse [EDJ] the reasonable cost of the training [EDJ] has provided," and acknowledged the repayment amount "bears a reasonable relationship to the computed damages [EDJ] would suffer from a breach by you." Exh. 1 ¶ 21. Also before beginning employment with EDJ, Plaintiffs each executed a compensation agreement, which stated the agreed-upon rate of compensation for each phase of the training, and explicitly noted there was a

---

[2] The Series 7 and 66 examinations are required by FINRA for FAs to buy and sell securities on behalf of clients.

"change in [the trainee's] hourly rate when [the trainee] complete[s] Study for Success." ECF 79 ¶ 35; Exh. 2 at 2, 4, 7. This agreement projected gross pay based on an estimate of 45 hours per week for the study phase and 60 hours per week for second phase of training (so a trainee would have a general understanding how much he or she might earn), but explicitly stated "[c]ompensation may vary based on the number of hours worked by the trainee." Exh. 2 at 2, 4, 7.

EDJ maintains a "timekeeping mechanism" for its trainees to record the hours they spend participating in the training program. ECF 79 ¶ 37; Exh. 3 ¶ 2. At all times relevant to Plaintiffs' allegations, EDJ prepopulated a trainee's timecard with the estimated 45 hours per week during the study phase, and 60 hours per week during the second phase, consistent with the projected gross pay contained in their respective compensation agreements. ECF 79 ¶¶ 36, 173; Exh. 3 ¶ 5. Each trainee was required to access the system to verify and submit a record of the time they worked each week; indeed, before any time could be submitted by a trainee, the system displayed the statement, "I have recorded all time accurately … I acknowledge … failing to enter all time accurately violates firm policy…." Exh. 3 ¶ 5. If a trainee worked an amount of hours different than the prepopulated number of hours, he or she was required to adjust the prepopulated number to make it consistent with the hours actually worked. Id. ¶ 6. Regardless of whether the trainee made changes to the timecard, he or she was required to verify and submit it before any payment would be processed. Id. The system recorded the date and time a trainee's time records were last modified for submission, as well as the individual who so modified. Id. ¶ 7. If a trainee did not timely access the system to submit his or her time, a service request was made so that the trainee would receive an off-cycle payment. Id. ¶ 9. There was no deadline for a service request to be made. Trainees maintained access to the timekeeping system throughout the training period until returning from Eval/Grad, at which point they are no longer hourly employees. Id. ¶ 10.

Throughout the training program, until the conclusion of Eval/Grad, Bland, Reyes, and Durkiewicz had access to, and accessed, the timekeeping system at EDJ. This is illustrated by their time records (which tracked the date and time they logged into the system to submit their time), as well as the undisputed fact they each received paychecks through the entire training period. Id. ¶¶ 12-14. With one exception, Bland always adjusted the prepopulated values up; he never recorded working less than 50 hours, and submitted as many as 88 hours, in a single week. Id. ¶ 12. Reyes always adjusted the prepopulated values up or down, and never simply reported working the prepopulated values. Id. ¶ 14. Durkiewicz sometimes adjusted the prepopulated values up, sometimes adjusted them down, and sometimes verified the prepopulated values were accurate. Id. ¶ 13. Plaintiffs were paid for every hour they reported, including all overtime, consistent with the agreed-upon rates contained in their compensation agreements (and regardless of the number of hours of overtime they reported in any given week).[3] Id. ¶¶ 12-14.

Plaintiffs completed EDJ's training program and achieved can-sell status, but subsequently left EDJ. ECF 79 ¶¶ 80, 86, 110, 117, 127, 152, 157. Plaintiffs allege thereafter receiving a letter requesting repayment for training costs pursuant to each Plaintiff's employment agreement, ECF 79 ¶¶ 87, 118, 130, 158, but no Plaintiff alleges they repaid any sum of training costs to EDJ, defended litigation filed against them by EDJ, or hired an attorney outside of the context of this litigation.[4] And, although Plaintiffs generally allege they were not paid the minimum wage or overtime because the payment of training costs purportedly diluted the wages they earned, id. ¶ 174, they do not allege EDJ made any deductions from their regular or overtime pay during their employment, or EDJ otherwise failed to pay their full wages for all hours they reported working.

---

[3]    Bland reported 0.75 hours on November 16, 2014, Exh. 3 ¶ 12, but his employment with EDJ did not start until November 17, 2014, Exh. 2 at 2.
[4]    Plaintiffs allege they hired the law firm of Stowell & Friedman, who are their attorneys in this action, "to defend [them] against the Firm's collection efforts and protect [their] rights." ECF 79 ¶¶ 88, 119, 159.

## ARGUMENT

In Count I, Plaintiffs Bland, Reyes, and Durkiewicz[5] again contend the TCRP is an unlawful kick-back of wages; EDJ failed to pay them for all hours worked; and EDJ misclassified them as exempt employees after they finished their training and started working as licensed FAs. However, Plaintiffs do not allege any repayment of training costs or other damages flowing from the TCRP; as this Court has found, Plaintiffs are therefore without standing to assert any claim based on the TCRP. Moreover, Plaintiffs do not state a claim for either an unlawful reduction in, or kick-back of, wages because the Court determined the employment contract and the parties' performance pursuant to it resulted in Plaintiffs' accrual of a debt EDJ is entitled to collect. Plaintiffs' claims that EDJ failed to pay them for hours worked are proven untrue by their own payroll records, and Bland's minimum wage and overtime claims also fail because they are outside the applicable statute of limitations. And, this Court' prior Order, guidance from the DOL, and federal courts across the country all support EDJ's classification of Plaintiffs as overtime exempt employees after their can-sell date. Plaintiffs' FLSA claim should be dismissed with prejudice.

Because Plaintiffs' Illinois (Count II – IWPCA, and Count III – IMWL) and Missouri (Count IV – MMWL) wage-and-hour claims are coextensive with the FLSA, all such claims should meet the same fate of dismissal with prejudice. Hughes v. Scarlett's G.P., 2016 WL 4179153, at *4 (N.D. Ill. Aug. 8, 2016) (FLSA and IMWL claims evaluated using same general analysis); Jackson v. Old EPT, 2014 WL 12696886, at *1 n.2 (W.D. Mo. Dec. 8, 2014) (MMWL interpreted same as FLSA); see Kavanagh v. KLM Royal Dutch Airlines, 566 F. Supp. 242, 245 (N.D. Ill. 1983) (dismissing plaintiff's IWPCA claim with prejudice where no deduction made

---

[5]    Because he asserts no FLSA claim, Bowles's wage-and-hour claims are addressed separately in Section V *infra*.

from his salary).[6]  And, all Plaintiffs' claims under the Missouri minimum wage statute are time-barred and merit dismissal because they allege no facts showing they are covered by the statute.

Finally, consistent with its prior Order, the Court should decline jurisdiction over the remaining state law claims (Counts V-X), as they are unrelated to the issues presented by the federal claim.  If considered, Counts V-X fail to state a claim and should also be dismissed.

## I.      In Counts I-IV, Plaintiffs Fail to State a Wage-and-Hour Claim Based on the TCRP.

### A.      Plaintiffs fail to establish standing to assert their claims based on the TCRP.

In their first amended complaint, Plaintiffs asserted federal and state wage-and-hour claims based upon the TCRP.  Plaintiffs alleged EDJ sent them a letter stating they owe or demanding they pay $75,000 as provided for by the TCRP.  However, they did not allege EDJ made any deduction from their wages, that they paid any amount in satisfaction of the TCRP, or that EDJ took any steps to initiate litigation.  Based on such allegations, the Court found Plaintiffs' claims were only an avowal of their fear of litigation that did not properly invoke its jurisdiction:

> Plaintiffs have already left Defendants' employ and now challenge the validity of the TCR Provision, purportedly in fear of imminent litigation against them to enforce the provision.  Based on the facts currently before it, this suit appears to be a tactical device whereby a party who would be a defendant in a coercive action may choose to a be plaintiff by winning the proverbial race to the courthouse.

ECF 68 at 12.  The Court concluded Plaintiffs lack standing to assert claims based on the TCRP.

In the Complaint, Plaintiffs include additional assertions regarding the contents of the alleged communication they received from EDJ, and the conclusory statement they each "feared imminent litigation and hired the law firm Stowell & Friedman to defend [them] against the Firm's

---

[6]     Plaintiffs do not cite any state statute or regulation requiring employers to make wage payments "free and clear" or otherwise prohibiting "kick-backs" of wages. The statutes Plaintiffs cite in Counts III and IV simply establish a minimum wage and do not otherwise address employers' rights to make deductions. The IWPCA claim does not grant any independent right to payment of wages; instead it only enforces the terms of an existing contract. Hughes, 2016 WL 4179153, at *4; see Enger v. Chicago Carriage Cab, 812 F.3d 565, 568 (7th Cir. 2016) (IWPCA claim requires plaintiffs to demonstrate they are "owed compensation from defendants pursuant to an employment agreement").

collection efforts and protect [their] rights." ECF 79 ¶¶ 88, 119, 131, 159.[7] However, such allegations are only more of what this Court has already rejected. They do not establish any Plaintiff engaged an attorney outside of this lawsuit, and do nothing to suggest EDJ has taken any steps to bring litigation against them or, most importantly, actually collected any money from Plaintiffs pursuant to the TCRP.[8] The threat of harm is too speculative on the facts Plaintiffs have alleged, and the Complaint only reinforces this suit is "a tactical device" to win "the proverbial race to the courthouse." ECF 68 at 12 (citing Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 712 (7th Cir. 2002) (threat of suit, however imminent, is not by itself enough to invoke federal power)). Accordingly, all claims based on the TCRP should be dismissed for lack of standing.[9]

### B. Plaintiffs fail to state a claim regarding the TCRP because it is not a kickback.

Even if Plaintiffs had standing to assert claims based on the TCRP, such claims fail as a matter of law. Relying on the weight of authority permitting employers to require the repayment of training costs without running afoul of the FLSA, such as Gordon v. City of Oakland, 627 F.3d 1092 (9th Cir. 2010); Heder v. City of Two Rivers, 295 F.3d 777 (7th Cir. 2002); and Park v. FDM Grp., 2018 WL 4100524 (S.D.N.Y. Mar. 9, 2017),[10] this Court found the TCRP and the parties' performance pursuant to it resulted in Plaintiffs' accrual of a debt EDJ is entitled to collect:

> All the arguments that Plaintiffs raise against the TCR Provision – that $75,000 does not bear a rational resemblance to the costs Defendants actually incurred in their training, that Defendants used the threat of the TCR Provision to force Plaintiffs to

---

[7] Plaintiffs further allege Reyes and Bowles researched online whether EDJ had taken legal action against former FAs, ECF 79 ¶¶ 131,159, and cite four FINRA awards (but do not allege any Plaintiff read them) in which EDJ recovered $9,375, id. ¶ 56. Such allegations do not bestow standing on any Plaintiff.

[8] According to publicly available documents, Bland and Reyes are no longer licensed brokers. Exh. 4.

[9] Plaintiffs' claims based on the TCRP should be dismissed for a similar, but independent reason: Plaintiffs have failed to plead an essential element – damage. The FLSA states an employer who violates the provisions of § 206 shall be liable to the affected employee in the amount of the unpaid minimum wages or overtime. 29 U.S.C. § 216(b). Plaintiffs do not allege they have any unpaid minimum wages or overtime as the result of the TCRP, are not entitled to any damages, and therefore have no claim. See Vega v. Mid Am. Taping & Reeling, 2018 WL 2933676, at *1 (N.D. Ill. June 12, 2018) (no FLSA claim where no cognizable injury in fact); In re Barnes & Noble Pin Pad Litig., 2016 WL 5720370, at *5 (N.D. Ill. Oct. 3, 2016) (no state law claim where no economic or out-of-pocket damages).

[10] The Court also rejected the holding of the only contrary authority, Ketner v. Branch Banking & Trust Co., 143 F. Supp. 3d 370 (M.D.N.C. 2015), in favor of the reasoning of these more persuasive cases. ECF 68 at 15-16, 26.

work extra allegedly uncompensated time, etc., are either potential defenses to the enforcement of the contract that Plaintiffs could raise if and when Defendants attempt to enforce the provision or possible reasons to invalidate the contract as a matter of state law. They are not reasons to find that the TRC Provision violates the FLSA. ***The TCR Provision does not violate the FLSA because it is not a kickback, but rather constitutes to a loan that Plaintiffs' accrued when they achieved "can sell" status.***

ECF 68 at 17 (emphasis added).

Plaintiffs' attempt to replead these claims does nothing to remedy the deficiencies the Court identified, as Plaintiffs offer only additional reasons to support their contention that $75,000 "bears no relationship to any training provided." ECF 79 ¶ 9. For example, Plaintiffs allege:

- The retail list price for the study materials is less than $75,000 (id. ¶ 24; see also ¶ 46);
- During KYC, FA trainees are sometimes housed in shared hotel rooms and served buffet-style hotel food or meals prepared in EDJ's on-campus cafeteria (id. ¶¶ 29, 68, 98);
- FA trainees do not receive training or other value commensurate to the $75,000 (id. ¶ 45);
- Training provided by EDJ is minimal and does not approach $75,000 (id. ¶ 46);
- Comparing EDJ to other firms illustrates the paucity of EDJ's training (id. ¶ 47); and
- The operation of the TCRP demonstrates the disconnect between the $75,000 obligation and EDJ's justification in recouping training costs (id. ¶¶ 49-52).

Each of these allegations challenges only the alleged value of the training, and none is an FLSA violation.[11] Nothing in the Complaint alters the Court's determination that EDJ invests in its trainees and may properly require them to repay at least part of that investment if they leave before EDJ feels it has recouped fair value for its investment. ECF 68 at 16.

Courts interpreting 29 C.F.R. § 531.35, including this Court, make clear an employee's agreement to repay training costs to an employer is not a "kickback with implications under the FLSA" and "has no effect vis-à-vis the FLSA's wage and hours requirements." ECF 68 at 25-26. Rather, the caselaw (and this Court) is clear – reimbursement of training costs "is not a kickback of Plaintiffs' salaries," id. at 25, and, so long as the employer does not deduct those costs from a

---

[11] Contrary to the allegations in the Complaint, Plaintiffs each acknowledged in their employment agreements the sum of training costs they agree to repay "bear[] a reasonable relationship to the computed damages [EDJ] would suffer from a breach by you and that [EDJ] will suffer demonstratable loss as a result of your breach." Exh. 1 ¶ 21.

paycheck, it may seek recovery of those training costs without running afoul of the FLSA. Plaintiffs' claims based on the TCRP should be dismissed with prejudice.

## II.     In Counts I-IV, Plaintiffs Fail to State Minimum Wage and Unpaid Overtime Claims.

In their first amended complaint, Plaintiffs alleged, in conclusory form, "[u]nder its policy and practice, [EDJ] knowingly discourages non-exempt FA Trainees from accurately reporting all of the hours they work." ECF 35 ¶ 22. The Court found such allegations were insufficient to state either a minimum wage or an unpaid overtime claim. The Court noted "Plaintiffs do not allege any facts detailing what, if any, specific pressure or policies led Plaintiffs to underreport their time," ECF 68 at 23, and instructed Plaintiffs to provide "facts to support a plausible claim that their effective hourly wages fell below the statutory minimum wages for at least one period" to state a minimum wage claim, and "at least one example of a pay period in which their pay was insufficient given the number of hours they worked" to state an overtime claim, id. at 19, 23.

In the Complaint, Plaintiffs reallege their minimum wage and overtime claims.[12] Plaintiffs do not, however, allege the total compensation received in even a single pay period, and therefore ignore the Court's plain instruction regarding how to replead a minimum wage claim. Plaintiffs add allegations regarding the number of hours they failed to report (and for which they were not paid), but many of these are only generally stated "averages" that span several pay periods, and do not satisfy the Court's instruction to provide at least one example of a single pay period in which their pay was insufficient given the number of hours worked. Moreover, when compared to Plaintiffs' own time and pay records, it is clear the specific allegations made by Plaintiffs are

---

[12]   Plaintiffs refer to a "compensation plan" that they did not attach to the Complaint and generally suggest "the Firm's compensation schedule is designed to avoid having to pay FA Trainees any overtime premium." ECF 79 ¶ 35. Without elaboration – and, importantly, without any specific allegation that Plaintiffs' wages ever fell below the minimum required by law – Plaintiffs imply that because their hourly rate varies depending on the phase of the training program they are in, or because their compensation plans each include "projected" weekly compensation, there must have been a violation of the FLSA or its state analogues. This Court has determined Plaintiffs' claims cannot survive a motion to dismiss based on such amorphous inferences. See ECF 68 at 21.

inaccurate, such that the Court should not accept them as true. Abcarian v. McDonald, 617 F.3d 931, 933 (7th Cir. 2010) (where motion to dismiss exhibits contradict the complaint allegations, "the exhibits trump the allegations"); Heuberger, 2017 WL 3923271, at *10 (rejecting allegation defendants made deductions from plaintiff's paycheck when pay records showed no deductions). Indeed, when compared to his own pay records, Bland's allegations demonstrate he was ***paid for more hours*** than he alleges he worked. Such allegations do not state a plausible claim under the FLSA (or corresponding state laws). Weston v. Ill. Dep't of Human Servs., 433 F. App'x 480, 482 (7th Cir. 2011) (affirming dismissal of FLSA claim where complaint failed to plausibly allege violation in view of payments received). And, Bland's allegations are outside of the applicable statute of limitations in any event. Plaintiffs' claims should be dismissed with prejudice.

### A. Bland's claims are time-barred.

FLSA claims face a maximum three-year statute of limitations. 29 U.S.C. § 255(a).[13] In paragraphs 65-77 of the Complaint, Bland alleges minimum wage and overtime violations that occurred prior to March 13, 2015, and are therefore clearly outside the applicable statute of limitations. Bland's minimum wage and overtime claims should be dismissed with prejudice. See ECF 68 at 31 (dismissing untimely overtime claims with prejudice).

### B. Materials central to Plaintiffs' claims show Bland's allegations are false.

#### 1. Bland – Study for Success

Plaintiffs allege during the study period,[14] Bland worked an average of 72-80 hours per week. ECF 79 ¶ 65. Plaintiffs allege during "the first few weeks," he did not know that he could record his time, but at some unidentified point located the timekeeping mechanism on EDJ's

---

[13]    Claims asserted in Count III under the IMWL (820 ILCS 105/12(a)) also have a three-year statute of limitations.

[14]    Plaintiffs allege the study period of Bland's training was "from approximately November 10, 2014 through January 9, 2016." ECF 79 ¶ 65. The allegation the study phase extended until January 9, 201**6** appears to be a typographical error. Moreover, Bland's study period, and his employment, started on November 17, 2014. Exh. 2.

intranet system. Id. Plaintiffs further allege an unidentified EDJ employee "told Bland and other FA Trainees on a conference call that they should not record more than 50 hours per week,"[15] and after Bland located the timekeeping mechanism he "began to report some of his hours, consistent with what the [EDJ] employee had instructed him to do." Id. Plaintiffs allege Bland "regularly worked 12-18 hours per week more than he was paid for during his study period."[16] Id. In short, Plaintiffs claim Bland did not record any time for "the first few weeks" of the study period, and then started recording 50 or less hours per week.

As an initial matter, none of these generally stated allegations satisfy the Court's instructions that Plaintiffs need to provide "facts to support a plausible claim that their effective hourly wages fell below the statutory minimum wage for at least one period" to state a minimum wage claim, or "at least one example of a pay period in which their pay was insufficient given the number of hours they worked" to state an overtime claim. In other words, these allegations remain too conclusory to adequately state either a minimum wage or an unpaid overtime claim.

More troublesome, however, is the fact that every substantive allegation is demonstrably incorrect. Bland *did* record his time during the first few weeks of the study period. Indeed, if Bland had not submitted a verified timesheet, he would not have been paid. Exh. 3 ¶ 6. On November 22, 2014 at 5:16 P.M., Bland submitted a timesheet for his first week of work. Id. ¶ 12. In doing so, he verified he "recorded all time accurately," and acknowledged "failing to enter all time accurately violates firm policy." Id. ¶ 5. Each week thereafter until the end of the study period, on November 29 and December 6, 13, 20, 27, 2014, and January 3 and 8, 2015, Bland submitted his timesheets, each time making the same verification regarding the accuracy of his

---

[15]    It is not clear if Plaintiffs allege this instruction applied to the entire training program, or just to the study phase.
[16]    Plaintiffs do not state how this estimate, or any of the other "estimates," of unpaid overtime was arrived upon, nor do they allege the corresponding alleged overtime hours were submitted to EDJ.

entries.  Id. ¶ 12.  Moreover, Plaintiffs' allegation that Bland recorded his time consistent with an instruction not to record more than 50 hours per week is plainly not true.[17]  Rather, ***Bland reported more than 50 hours every single week*** *he worked during the study phase of his training*.  Id. Indeed, for half of these weeks he reported more than 60, and as many as 63.5, hours.  Id.

Materials central to the Complaint indisputably illustrate Bland had access to the timekeeping system at all times during the study phase, he reported his time every week, and he did not follow any alleged instruction not to report more than 50 hours per week.  Such materials also render implausible the allegation he worked 12-18 hours for which he was not paid.

### 2.    Bland – KYC

Plaintiffs next allege after Bland passed the Series 7 and 66 licensure exams, he attended KYC.  Plaintiffs allege Bland traveled to St. Louis on Sunday, January 11, 2015, and participated in sales training "from Monday morning through Friday afternoon."  ECF 79 ¶ 67.  Plaintiffs allege "[d]uring the four and one-half days in St. Louis, Bland worked an average of 12-13 hours per day," and "worked approximately 64 hours during" KYC.  Id. ¶ 68.   However, Plaintiffs allege Bland was not able to report any of the time he worked during KYC, id. ¶ 71, and EDJ "failed to pay Bland approximately 12 hours of overtime," including the four hours he spent traveling to, or the approximately four and one-half hours he spent traveling home from, St. Louis, id. ¶ 68.

Paragraph 68 appears designed to address the Court's instruction that Plaintiffs must provide an example of a pay period in which their pay was insufficient given the number of hours they worked to maintain an overtime claim.  However, Plaintiffs do not satisfy the Court's Order because they again make allegations that are demonstrably false.  On January 17, 2015 at 12:13 P.M., Bland logged into the system and reported his hours.  Exh. 3 ¶ 12.  Bland reported 6.50 hours

---

[17]    Even accepting as true that Bland was instructed not to record more than 50 hours a week (which EDJ disputes), he clearly and repeatedly ignored this direction.

with a note for "Travel from Charlotte to KYC" on January 11, 2015. Id. at 18.  Bland also reported

11 hours each day, and an additional eight hours on Friday, apparently for travel home.[18]  Id. ¶ 12.

Even more remarkable than these false allegations, however, is that Bland's records illustrate he

reported and was paid for 74.5 hours this week, **_10.5 hours _more_ than he alleges he worked_** to

showcase his unpaid overtime claim.  Compare ECF 79 ¶ 68, with Exh. 3 ¶ 12.  Of course, by

alleging Bland worked fewer hours than he was paid, Plaintiffs do not state an overtime claim.

### 3.     Bland – Field Foundations ("Door Knocking")

Plaintiffs next allege after returning home from KYC, Bland "discovered that the

timekeeping mechanism was no longer active," and from then "until Bland achieved his 'can-sell'

status and thereafter, Bland was not able to record his time."  ECF 79 ¶ 71.  Plaintiffs allege during

this second phase of the training, "Bland typically worked 7 days per week and averaged 78-83

hours per week," id. ¶ 72, but he "did not record his time because [EDJ] did not provide a

mechanism to do so," and therefore "worked approximately 12-16 hours of overtime per week

during the door knocking stage for which he was not compensated," id. ¶ 75.

Again, none of these general allegations satisfy the Court's instructions for stating

minimum wage or overtime claims.  And, again, each allegation is false.  Bland recorded his time

each week during the second phase of training, submitting his time on January 24 and 31, and

February 7, 14, 21, and 28, 2015. Exh. 3 ¶ 12. The allegation Bland "did not record his time because

[EDJ] did not provide a mechanism to do so" is therefore not true.  Moreover, every week during

this second phase of training (save for one week in which it is noted he was in the hospital for two

days, id. at 24), Bland recorded more than 70 hours a week.  Indeed, Bland twice reported more

---

[18]     Plaintiffs allege Bland "returned home from St. Louis late Friday evening [January 16, 2015] and began door the door knocking stage … on the following Monday morning."  ECF 79 ¶ 72.  Bland, however, reported five hours of work on January 17, 2015.  Exh. 3 at 18.  As alleged, Bland reported (and was paid for) time on a day he did not work.

than 80 hours, and ***reported as many as <u>88 hours</u> in a single week***. <u>Id</u>. ¶ 12. The Firm paid him

for all such hours, including overtime. <u>Id</u>. The allegation Bland "averaged 78-83 hours per week,"

but he "worked approximately 12-16 hours of overtime per week" for which he was not paid is

wrong. And, it is not plausible he was operating under any impression not to report all of his time.

### 4. Bland – Eval/Grad

Finally, Plaintiffs allege at the end of the second phase of his training, from March 1 to 6,

2015, "Bland once again traveled to St. Louis" for Eval/Grad. ECF 79 ¶ 77. Plaintiffs allege

"[d]uring the four and one-half days in St. Louis, Bland worked an average of 12-13 hours per

day," and, "[i]ncluding the time he spent traveling, Bland worked approximately 64 hours" this

week. <u>Id</u>. Plaintiffs allege EDJ failed to pay him approximately 12 hours of overtime. <u>Id</u>.

These allegations appear to be another effort by Plaintiffs to satisfy the Court's instruction

to provide an example of a pay period in which their pay was insufficient given the number of

hours they worked. However, Plaintiffs again allege facts inconsistent with reality. On March 7,

2015, at 5:14 P.M., Bland accessed the timekeeping system and reported ***83.5 hours*** for the week

of March 1, 2015. Exh. 3 ¶ 12. Bland was paid for these hours, including all overtime. In other

words, Bland was paid for ***nearly 20 hours <u>more</u> than Plaintiffs now allege he worked***. Again,

by alleging Bland worked fewer hours than he was paid, Plaintiffs do not state an overtime claim.

### C. Reyes and Durkiewicz's allegations are also false.

Plaintiffs' reckless allegations outlined above undermine every other allegation brought in

this lawsuit. Moreover, allegations regarding Reyes and Durkiewicz similarly do not satisfy the

Court's directive regarding how to state minimum wage or overtime claims. For example:

**Reyes**: Unlike Bland, Plaintiffs do not allege Reyes was instructed not to accurately record

his time, and, as such, do not explain "what, if any, specific pressure or policies led [Reyes] to

underreport [his] time." See ECF 68 at 23. Like Bland, Plaintiffs' allegations regarding Reyes's hours worked are untrue. Plaintiffs allege during the study phase of his training (October 26 to December 23, 2015), he "worked an average of 55-60 hours per week," and "approximately 10-15 hours of overtime per week more than he was compensated." ECF 79 ¶¶ 138-39. If true, Reyes's payroll records would reflect he never reported more than 50 hours per week during this time. Instead, Reyes's records show he submitted and was paid for ***over 50 hours a week every week*** – and as many as 62.50 hours (save for the week of Christmas). Exh. 3 ¶ 14.

**Durkiewicz**: Plaintiffs allege after KYC on September 25, 2015, Durkiewicz discovered "the timekeeping mechanism was no longer active," and from then until she reached can-sell status, she "did not record time." ECF 79 ¶ 100. In reality, Durkiewicz accessed the system to verify and submit her time on September 25, 2015, and subsequent weeks until the end of her training (on October 1, 9, 15, 23, and 29, 2015). Exh. 3 ¶ 13. Plaintiffs' allegation Durkiewicz did not access the timekeeping system for the second phase of her training is demonstrably untrue. Plaintiffs also allege during the week starting September 20, 2015, Durkiewicz "worked an average of 12-13 hours per day" and "approximately 62 hours" for the week, and was not paid for "approximately 10-12 hours of overtime." ECF 79 ¶ 98. However, Durkiewicz accessed the timekeeping system on September 25, 2015 at 9:37 A.M. and reported 60 hours, Exh. 3 ¶ 13, falling well within the approximate range Plaintiffs allege she worked, and well short of the purported underpayment.

Plaintiffs do not follow this Court's instructions for repleading and do not state a plausible wage-and-hour claim in any event. All such claims should be dismissed with prejudice.

### III. In Counts I-IV, Plaintiffs Fail to State a Misclassification Claim.

In their first amended complaint, Plaintiffs alleged EDJ misclassified them as exempt employees once they reached can-sell because they failed to meet either the "salary-basis test" or

"the job-duties test," and were therefore owed unpaid overtime. The Court dismissed Plaintiffs'

misclassification claims for three reasons. *First*, the Court found such claims could not be asserted

because Plaintiffs' allegations regarding the overtime worked were "formulaic and conclusory,"

and therefore were "not enough to state a claim for overtime." ECF 68 at 25. *Next*, the Court

found Plaintiffs could not show they failed the salary-basis test by claiming their employment was

subject to the TCRP, and did not otherwise plausibly allege the compensation system for Plaintiffs

failed to meet the salary-basis test. Id. at 25-27. *Finally*, the Court found Plaintiffs could not base

their job-duties challenge on an allegation they sold financial products "because such sales

inherently involve their professional judgment" under FINRA:[19] "The Court cannot infer that

Plaintiffs are not exempt because they allegedly regularly violated their professional duties under

FINRA, without Plaintiffs' explicit allegation acknowledging that selling products in the manner

that they allegedly did, or were required to, violated FINRA regulations." Id. at 27-30.

In the Complaint, Plaintiffs again assert misclassification claims. However, Plaintiffs

again fail to make any allegations regarding their actual compensation after achieving can-sell

status, and their allegations regarding hours worked are generally stated "averages" that span

several pay periods. ECF 79 ¶¶ 80, 110, 152. Plaintiffs do not satisfy the Court's instruction to

provide at least one example of a pay period in which their pay was insufficient given the number

of hours worked, and they therefore fail to adequately state any overtime claim. Accordingly, their

misclassification claims should be dismissed on this basis alone.

Plaintiffs also allege after reaching can-sell, an FA does "not meet the salary basis test,"

but once again tether this contention to the TCRP. ECF 79 ¶ 42. Plaintiffs also repeat the same,

conclusory allegation EDJ "did not pay them a guaranteed, predetermined salary" because under

---

[19] See FINRA Rule 2111(a); FINRA Rule 2090.

the compensation plan "their wages were subject to reduction because of alleged variations in the quality or quantity of work performed." Id. ¶ 177; ECF 35 ¶ 84. But, Plaintiffs do not (and cannot) allege any of their salaries, in fact, fell below the standard required by 29 C.F.R. § 541.200 to satisfy the administrative exemption.[20] And, for the reasons stated above (and by the Court), there is no wage-and-hour significance associated with the TCRP. The Court already unequivocally determined neither the TCRP nor the Firm's compensation plan violates the salary-basis test, ECF 68 at 25-27, and Plaintiffs' reassertion of this unaltered claim should be summarily dismissed.

Finally, Plaintiffs again contend they fail the job-duties test because their primary duty was "gathering sales leads and selling financial products." ECF 79 ¶ 178. Specifically, Plaintiffs allege after achieving can-sell status, Bland, Durkiewicz, and Reyes prospected for clients "while also attempting to sell [EDJ]'s preferred financial products." ECF 79 ¶¶ 80, 110, 152. Plaintiffs allege EDJ provided them with a short list of preferred products from which to sell, and they sold exclusively from this list because EDJ directed and incentivized them to do so, provided little to no product training during the training period, and they felt such products were "safe" to sell. Id. ¶¶ 81, 111, 153. Plaintiffs further allege they felt unprepared to provide financial advice to customers, and relied heavily on a proprietary EDJ application to determine the recommended preferred partner products to sell to prospective and active clients.[21] Id. ¶¶ 84, 114-15, 156.

Plaintiffs fall well short of what this Court required to maintain a job-duties challenge, as no Plaintiff provides an explicit allegation in which they acknowledge that while working for EDJ, he or she violated his or her own duties under FINRA rules. Rather, Plaintiffs only confirm they

---

[20]   Plaintiffs' compensation plan stated "you are paid a Minimum Guaranteed Salary ('MGS') each month," and "[t]he MGS will **_not_** be reduced based on the quality or quantity of work you perform." Exh. 2 at 2, 4, 7.
[21]   It is curious that Bland asserts claims based on the suggestion he was not skilled or competent to perform his job as a licensed FA. In the context of another lawsuit he filed against EDJ (also through Stowell & Friedman), Bland submitted sworn testimony he had "expertise in serving financial advisory clients" and was "well qualified to succeed as an [EDJ] FA." Bland v. Edward D. Jones, & Co., L.P., Case No. 18-cv-3673 (N.D. Ill.), ECF 38-2 at 7.

spent their time advising clients or selling financial products as licensed FAs. Both the DOL opinion letters and decisional authority hold such activities are exempt because they inherently involve professional judgment given FINRA's requirements.[22] Plaintiffs' contention they sold from a Firm's "preferred products list," either because they were not skilled enough to understand other options or were incentivized to do so, is just another flavor of the already-rejected allegation they sold financial products without regard to the clients' individual needs, circumstances, or objectives. ECF 68 at 29-30. Plaintiffs' challenge to the job-duties test fails.

Plaintiffs' misclassification claims again fail, as Plaintiffs' allegations regarding the work they performed establish they were properly classified as exempt from the FLSA overtime requirements. Plaintiffs' misclassification claims should be dismissed with prejudice.[23]

## IV. Plaintiffs' Claims in Count IV are Without Sufficient Contacts and are Time-Barred.

In Count IV, Plaintiffs – who worked for EDJ in Illinois and the Carolinas – allege EDJ violated Missouri law by failing to pay minimum and overtime wages. ECF 79 ¶¶ 203, 205. Such claims fail for the reasons stated above. Additionally, each Plaintiff's claim under the MMWL is time-barred by the MMWL's then two-year statute of limitations.[24] See Mo. Rev. Stat. § 290.527. Moreover, Plaintiffs fail to plead sufficient contacts with Missouri, because the allegations their

---

[22]  29 C.F.R. § 541.203(b); Dep't of Labor, Op. Ltr. FLSA, No. FLSA2006-43, 2006 WL 3832994 (Nov. 27, 2006); In re Morgan Stanley Smith Barney LLC Wage & Hour Lit., 2017 WL 772904, at *6, 8 (D.N.J. Feb. 28, 2017); Tsyn v. Wells Fargo, 2016 WL 612926, at *17-18 (N.D. Cal. Feb. 16, 2016); Hein v. PNC Fin. Servs., 511 F. Supp. 2d 563, 570-71, 573 (E.D. Penn. 2007); cf. Bachrach v. Chase Inv. Servs., 2007 WL 3244186, at *3 (D.N.J. Nov. 1, 2007).

[23]  Plaintiffs allege EDJ has started to offer fee-based account options, as well as "preferred partner products" or proprietary products. ECF 79 ¶ 12. EDJ has indeed expanded its account options over the past decade to include fee-based accounts with sophisticated advisory services backed by Firm research and technology, in addition to brokerage accounts in which clients pay commissions on each transaction. EDJ has made these offerings consistent with its longstanding focus on helping serious long-term investors achieve individual financial goals, and in response to client feedback, investor demand, and industry developments. Importantly, there is no authority, anywhere, that suggests allowing investors to choose fee-based accounts, or including "preferred partner products" or proprietary products in an investment company's offerings, divests licensed FAs from abiding by their obligations under FINRA rules.

[24]  Each Plaintiff alleges a can-sell date and becoming an exempt employee before March 18, 2016. ECF 79 ¶¶ 80 (Bland in March 2015), 110 (Durkiewicz in November 2015), 152 (Reyes in February 2016). For the reasons stated in Section III supra, Plaintiffs allege they became exempt employees outside of the then-applicable limitations period.

employment agreements contain a Missouri choice-of-law provision, and they attended some training in Missouri, fall short of the necessary contacts. Wickenhauser v. Edward D. Jones & Co., 953 F. Supp. 286, 289-90 (E.D. Mo. 1996).  Each Plaintiff's MMWL claim should be dismissed.

## V.     Bowles's State Law Wage-and-Hour Claims in Counts II-IV Should Be Dismissed.[25]

As this Court has already found, Bowles's FLSA off-the-clock and misclassification claims are time-barred, ECF 68 at 31, and he asserts no federal claim in the Complaint, ECF 79 ¶ 167. For the above reasons, Bowles's state wage-and-hour claims are without merit. Moreover, the end of Bowles's employment with EDJ is outside the statute of limitations for Count III (820 ILCS 105/12(a)) and Count IV (§ 290.527 R.S.Mo.).  Count II also fails because Plaintiffs fail to specifically identify a single pay period where, under his employment contract, his pay was insufficient given the number of hours he worked.  Plaintiffs do not allege EDJ instructed Bowles not to accurately record all of his time, and do not allege EDJ failed to provide him a mechanism to record all of his time.  In this regard, Plaintiffs fail to detail what specific pressure or policies would have led him to underreport his time.  Plaintiffs make no other allegations regarding: (1) Bowles's time in the training program; or (2) Bowles's time or duties worked after achieving can-sell.  These scant allegations also do not state a IWPCA claim.  Enger, 812 F.3d at 570. Accordingly, Bowles's state law wage-and-hour claims should be dismissed.

## VI.    The Court Should Not Exercise Subject Matter or Supplemental Jurisdiction Over Plaintiffs' Remaining Claims, Counts V-X, and Such Claims are Inadequately Pled.[26]

Plaintiffs' remaining state law claims bear no relation to their federal wage-and-hour claim (in particular, because the TCRP has no wage-and-hour significance), and should be dismissed,

---

[25]    Because proving the federal claim asserted by Bland, Durkiewicz, and Reyes does not prove Bowles's state law claims, it is questionable whether the Court even has subject matter jurisdiction over these claims.  White v. Addante, 498 F. Supp. 2d 1109, 1112 (N.D. Ill. 2007) (dismissing one plaintiff's state law claim that had no effect on another plaintiff's federal claim for lack of subject matter jurisdiction).

[26]    It is not clear under what state's law Plaintiffs assert these state law claims.

regardless of whether the FLSA claim is dismissed in its entirety.  White v. Addante, 498 F. Supp. 2d 1109, 1112 (N.D. Ill. 2007) (court lacks subject matter jurisdiction over state law claims that do not share a common nucleus of operative facts with federal claim).[27]  Moreover, as this Court stated, it is well-established in this Circuit "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed."  ECF 68 at 31-32. Therefore, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims if it dismisses the FLSA claim.  However, if the Court considers such claims, they should be dismissed with prejudice for the reasons stated below.

**A.** **Plaintiffs fail to state a cognizable fraudulent inducement claim in Count V.**

To sustain an action for fraudulent inducement, a plaintiff must plead: a false statement of material fact; known or believed to be false by the party making it; an intent to induce the other party to act; action by the other party in reliance on the statement's truth; and damage to the other party resulting from such reliance.  Aeroground v. CenterPoint Props., 2010 WL 2169493, at *2 (N.D. Ill. May 27, 2010).  Allegations of fraudulent inducement must comply with Rule 9(b)'s heightened pleading standard.  Id.  Plaintiffs allege EDJ falsely represented to them the value of the training program, and guaranteed them successful and lucrative careers, thereby inducing them to join and work for the Firm and forego other employment offers.  ECF 79 ¶¶ 208-13.  However, Plaintiffs' fraudulent inducement claim should be dismissed because the Complaint does not identify the person who made the allegedly false statements, how such statements are false, why the person who made them knew they were false, or otherwise describe the circumstances under which the statements were made with the specificity required by Rule 9(b).  Moreover, Plaintiffs

---

[27]    There is no complete diversity, and therefore no diversity jurisdiction, for Plaintiffs' remaining state law claims because Defendants are limited partnerships; Plaintiffs have not met their burden to establish diversity jurisdiction because they have not alleged the citizenship of every partner, and, in any event, there is at least one partner that is a citizen of Illinois that would destroy diversity.  See ECF 28 and 29.

were not damaged, as they all participated in, and completed, the training program, became licensed FAs, were correctly paid for the services they provided to EDJ, and were given every opportunity to succeed. Plaintiffs' fraudulent inducement claim should be dismissed.

**B.** **Plaintiffs fail to state a cognizable breach of contract claim in Count VI.**

Plaintiffs' Missouri law breach of contract claim appears to be based on their respective employment agreements. Specifically, Plaintiffs allege that although these agreements obligated them to repay the cost of their training, EDJ failed to provide that training. ECF 79 ¶ 218. Although Plaintiffs generically allege EDJ breached their employment agreements, they fail to specifically allege how EDJ allegedly failed to train them. Rather, the only details in the Complaint about training are the many allegations regarding the training EDJ did provide them. Nor do Plaintiffs state how EDJ's alleged failure to train them breached their employment agreements. Accordingly, Plaintiffs' breach of contract claim is facially deficient and should be dismissed. See Airborne Beepers & Video v. AT&T Mobility, 499 F.3d 663, 667 (7th Cir. 2007) (at some point the factual detail in a complaint may be so sketchy it does not provide sufficient notice of claim).

**C.** **Plaintiffs fail to state a cognizable rescission claim in Count VII.**

In Count VII, Plaintiffs allege the TCRP constitutes an unlawful clawback of wages, penalty, and restrictive covenant. ECF 79 ¶¶ 224-26. A claim for rescission is sufficient "if it alleges: (1) substantial nonperformance or breach by the defendant; and (2) that the parties can be restored to the status quo ante." Pardo v. Mecum Auction, 77 F. Supp. 3d 703, 711 (N.D. Ill. 2014). Here, Plaintiffs do not argue EDJ has agreed to rescind the disputed contracts, or there has been substantial nonperformance of the contracts by EDJ. Indeed, Plaintiffs allege the opposite – they received the training, and EDJ now seeks to enforce Plaintiffs' contractual obligations. And, as Plaintiffs have already received the training, the parties cannot be restored to the status quo

23

unless Plaintiffs reimburse EDJ a sum corresponding to the agreed-upon value of the training provided to them. Rescission is not available to Plaintiffs and the claim should be dismissed.

### D. Plaintiffs fail to state a cognizable unjust enrichment claim in Count VIII.

In Count VIII, Plaintiffs allege EDJ "retained the client account procured" by them, "which continued to generate fees and revenues for" EDJ, but EDJ "did not compensate" them "for the benefits the Firm retained" and instead sought to recover training costs.[28] ECF 79 ¶ 232. However, an unjust enrichment claim is unavailable where the parties entered into a contract which governs the dispute. Hickman v. Wells Fargo Bank, 683 F. Supp. 2d 779, 797 (N.D. Ill. 2010). Throughout the Complaint, Plaintiffs allege the existence of a contract with a recoupment provision. See, e.g., ECF 79 ¶¶ 17-18. Plaintiffs may not assert a cause of action based on the existence of a contract with the TCRP and, at the same time, allege a cause of action that presumes no such contract exists.

Moreover, Plaintiffs acknowledge in their employment agreements they hold no ownership interest in client relationships,[29] and in the Complaint Plaintiffs allege "[i]n consideration of their employment agreements," they provided "their time and services to acquire sales leads, clients and client accounts, to generate revenues for Defendants, and Defendants provided Plaintiffs with a salary." Id. ¶ 217. In other words, developing accounts for EDJ was what they agreed, and were paid, to do. Plaintiffs do not allege a single fact to support any right to or reasonable expectation of retaining any clients they serviced while employed by EDJ, or that they have been affirmatively misled to believe they had any legal entitlement to retain such clients upon leaving EDJ. Plaintiffs fail to explain how EDJ's retention of its own customers following Plaintiffs' resignations is unjust

---

[28]    To the extent Plaintiffs allege their unjust enrichment claim is tethered to their wage-and-hour claims arising from the TCRP, such claims must be dismissed. See, e.g., Martis v. Grinnell Mut. Reins., 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) (when underlying claim is deficient, a claim for unjust enrichment should also be dismissed).

[29]    See, e.g., Exh. 1, ¶ 13 (the "identities, names, addresses and telephone numbers of any account and/or client" are confidential, proprietary trade secrets of EDJ); id. (for one year following separation of employment former FA shall not "solicit .... directly or indirectly, any clients of" EDJ); id. ¶ 5 (FA's right to earn commissions on client accounts "ends with trades settling during [the advisor's] month of termination").

or results in a detriment to Plaintiffs. For similar reasons, Plaintiffs fail to plead unjust retention of a benefit by EDJ to Plaintiffs' detriment. Sadler v. Retail Props., 2014 WL 2598804, at *19-21 (N.D. Ill. June 10, 2014) (no unjust enrichment claim where no unjust benefit was conferred upon defendants). Plaintiffs do not state an unjust enrichment claim and it should be dismissed.

### E. Plaintiffs fail to state a cognizable Illinois consumer fraud claim in Count IX.

Plaintiffs' Illinois consumer fraud claim is frivolous, as Plaintiffs were employees, not consumers. See 815 ILCS 505/1(e); Hess v. Kanoski & Assocs., 668 F.3d 446, 454 (7th Cir. 2012) ("[the plaintiff] has no claim under the Illinois Consumer Fraud Act … because [he] was an employee, not a 'consumer.'"). Count IX should be dismissed.

### F. Plaintiffs fail to state a Declaratory Judgment Act claim in Count X.

Finally, Plaintiffs assert a claim for declaratory relief, alleging the TCRP is an unenforceable penalty and restrictive covenant. Plaintiffs lack standing to assert this claim, for the same reason they lack standing to challenge the TCRP as a violation of the FLSA – there is no existing case or controversy. Appleby v. Sprint Nextel, 2008 WL 2130428, at *5 (S.D. Ill. May 20, 2008). In any event, recoupment provisions are neither unenforceable penalties nor unlawful restrictive covenants. Rather, such provisions are valid and enforceable. Heder, 295 F.3d at 782 (reimbursement provision not non-compete agreement); Smith v. Kriska, 113 S.W.3d 293, 298 (Mo. App. 2003). Plaintiffs' request for declaratory relief should be denied.

### CONCLUSION

WHEREFORE, Defendants' Motion to Dismiss should be granted. Plaintiffs' wage-and-hour claims under the FLSA and state analogues (Counts I-IV) should be dismissed with prejudice. The Court should decline to exercise jurisdiction over Plaintiffs' remaining claims based on state law (Counts V-X) or, alternatively, such claims should be dismissed with prejudice.

Dated: June 17, 2019

Respectfully submitted,

**DOWD BENNETT LLP**

By: /s/ John J. Rehmann
James F. Bennett (*pro hac vice*)
John J. Rehmann (*pro hac vice*)
Michelle D. Nasser
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
jbennett@dowdbennett.com
jrehmann@dowdbennett.com
mnasser@dowdbennett.com

**BRESSLER AMERY ROSS, P.C.**

Brian F. Amery (*pro hac vice*)
Carole Miller (*pro hac vice*)
Stuart D. Roberts (*pro hac vice*)
2001 Park Place, Suite 1500
Birmingham, Alabama 35203
(205) 719-0400 (telephone)
(205) 719-0500 (facsimile)
bamery@bressler.com
cmiller@bressler.com
sroberts@bressler.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of June, 2019 a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was filed via the Court's ECF system effecting service upon the following Counsel of record:

Linda Debra Friedman
Suzanne E. Bish
George S. Robot
Stowell & Friedman, Ltd.
303 W. Madison Street
Suite 2600
Chicago, IL 60606
312-431-0888
lfriedman@sfltd.com
sbish@sfltd.com
grobot@sfltd.com

/s/ John J. Rehmann